BUSCH JEWELRY Co., INC., et al., Respondents, *v.* UNITED RETAIL EMPLOYEES' UNION LOCAL 830, et al., Appellants.

Argued April 21, 1939; decided July 11, 1939.

*Harry Sacher* and *Samuel M. Sacher* for appellants.

*Osmond K. Fraenkel* and *Nathan Greene* for New York City Civil Liberties Committee, *amicus curiæ.*

*Walter Chalaire, Bernard Phillips* and *Soia Mentschikoff* for respondents.

*Edwin M. Otterbourg* and *Frederic P. Houston* for New York Board of Trade, Inc., *amicus curiæ.*

Hubbs, J. The respondents, hereinafter referred to as the companies, operate twelve retail stores in New York city. The appellants will be referred to as the unions. Labor difficulties arose between the unions and the companies, and an attempt was made to settle such differences by negotiations, but the representatives of the unions would not negotiate while there was a stenographer in the room. They threatened to strike and left the room with the statement, " I'll meet you at the barricade." On May 17, 1938, the unions called a strike against the companies and established picket lines at the companies' stores. There are no questions of fact involved. The detailed findings of the learned trial court are fully sustained by the evidence and in most instances are undisputed.

From noon of May 17, 1938, until May 26th pickets in crowds blocked the walks in front of the companies' stores and prevented prospective customers from entering, not only by crowding the entrances but often by threats and physical violence. Employees who remained at work were intimidated by threats of personal violence and coercion. The pickets in crowds used loud, violent and obscene language and made false and fraudulent statements to induce injury to and destruction of the companies' property. By violence, force, threats and obscene and abusive language they prevented customers from paying bills which they owed the companies. Not content with picketing the companies' places of business, they threatened in a violent manner to picket the homes of employees and customers, and thereafter did picket the homes of certain employees and customers. They yelled and shouted and conducted snake dances in front of the companies' stores, and by their conduct collected large crowds. They called the companies' employees " dirty scabs and rats," and stated to them, " You will get yours for continuing to work." An employee was told that he had better come out on strike, that the union " will get you." A lady customer on leaving a store was told that if she didn't take the merchandise back into the store they would " get " her. A lady employee as she was entering a store was abused and threatened and a striker put his arms around her in an effort to keep her from entering the store. The strikers shouted that the companies gave " phoney " receipts and that their jewelry was second hand. Prescriptions for glasses, left by customers, were withdrawn from the store files.

Sufficient has been said to illustrate the extreme length to which the strikers went and the unlawful and dangerous nature of their acts. The companies repeatedly appealed to the police for protection from the unlawful acts and were repeatedly informed that the police were helpless to protect them. The unlawful conduct was not that of individuals acting from impulse and excitement but were acts deliberately inspired by the unions and approved by them. The

conduct of the strikers was advised in printed bulletins issued by the unions and their illegal acts were expressly approved in bulletins issued after they took place. The record discloses beyond question a deliberately prepared illegal plan, and the trial judge has so found.

The same conduct continued after the commencement of this action for an injunction, during the trial, and in total disregard of the trial justice's oral instructions. It thus appears that the unions did not act in ignorance of the law but that they acted with full knowledge that their acts were in violation of law and illegal. The trial justice found that the unions had threatened to continue such illegal acts.

In the bulletin of May 18th the union advised the pickets to cast restraint aside, to become louder and more aggressive, and to keep prospective customers from entering the stores. Other bulletins advised the pickets to use language and antics provocative of violence, disorderly conduct and breach of the peace.

Organized labor has the rights of free speech, peaceful picketing and collective bargaining. Those rights are fully protected by law. During peaceful picketing there may occur minor disorders on the part of some of those engaged in picketing, owing to the over-enthusiasm of individuals, for which acts the unions are not responsible and which they generally repudiate. Unions which authorize a strike and picketing are under a legal responsibility to the public not only to avail themselves of their lawful rights in a legal way, but also to endeavor to uphold all laws and to avoid the destruction of property, disorderly conduct, personal assaults, breach of the peace, violence and fraud. When unions not only fail to live up to that responsibility but deliberately, willfully and with full knowledge that their acts are illegal, advise and encourage the commission of acts which are in violation of law and result in disorderly conduct and breach of the peace, they are no longer entitled to the benefits of special statutes enacted to protect them in the enjoyment of their conceded right of peaceful picketing.

Prior to the enactment of section 876-a of the Civil Practice Act this court had decided that a trial court had jurisdiction to enjoin all picketing where it appeared that a union had failed in its responsibility to the public and it was established that any picketing in the future would result in the same kind of disorderly conduct and unlawful acts. (*Nann* v. *Raimist*, 255 N. Y. 307; *Steinkritz Amusement Corp.* v. *Kaplan*, 257 N. Y. 294; *Wise Shoe Co.* v. *Lowenthal*, 266 N. Y. 264.) Were it not for the provisions of section 876-a of the Civil Practice Act enacted by chapter 477 of the Laws of 1935, it would undoubtedly be the duty of this court to affirm the judgment here in question.

The effect of that statute is to prevent courts from enjoining peaceful picketing. It was never intended to deprive the Supreme Court of jurisdiction to enjoin dangerous, illegal acts which constituted disorderly conduct and breach of the peace. If such was its intent and effect it is to that extent unconstitutional and void as an attempt to abridge the jurisdiction of the Supreme Court, guaranteed by article VI, section 1, of the State Constitution. (*DeHart* v. *Hatch*, 3 Hun, 375; *People ex rel. Swift* v. *Luce*, 204 N. Y. 478.)

The trial court has made every finding required by section 876-a of the Civil Practice Act. It has found specifically " that all the unlawful acts hereinabove described　*　*　* will be continued unless enjoined by this court;" also " that further unlawful acts of the nature hereinabove discussed have been threatened by defendants."

It is difficult to see how the trial court could have made more specific findings. If a trial court can ever grant an injunction against continuing picketing where the picketing has been carried on with violence and will be in the future, this is such a case.

In the case of *Steinkritz Amusement Co.* v. *Kaplan* (*supra*, p. 296) we said: " In the case of *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin* (245 N. Y. 260, at p. 269) it was said: ' Where unlawful picketing has been continued; where violence and intimidation have been used and where mis-

statements as to the employers' business have been distributed, a broad injunction prohibiting all picketing may be granted. The course of conduct of the strikers has been such as to indicate the danger of injury to property if any picketing whatever is allowed.'

" Where such an injunction has been granted, ' This court may not interfere except for manifest abuse.' (*Nann* v. *Raimist*, 255 N. Y. 307, at p. 315.) "

To the same effect is the case of *Wise Shoe Co.* v. *Lowenthal* (*supra*).

The late decisions of the United States Supreme Court are apparently in harmony with our decisions. Referring to the National Labor Relations Law (U. S. Code, tit. 29, ch. 7) that court said: " There is not a line in the statute to warrant the conclusion that it is any part of the policies of the Act to encourage employees to resort to force and violence in defiance of the law of the land." (*National Labor Relations Board* v. *Fansteel Metallurgical Corp.*, 306 U. S. 240, 257.)

The judgment of the Appellate Division should be affirmed, without costs, and the motion to dismiss the appeal denied.

LEHMAN, J. (dissenting). Findings sustained by competent evidence and not challenged upon this appeal establish that picketing in this case has been conducted in an unlawful manner and that the illegal and wrongful acts were approved and even incited by the defendant unions, as part of a deliberately prepared plan. I accept the statement of facts contained in the prevailing opinion. I agree, too, with the court's conclusion that " the effect of [the] statute is to prevent courts from enjoining peaceful picketing. It was never intended to deprive the Supreme Court of jurisdiction to enjoin dangerous, illegal acts which constituted disorderly conduct and breach of the peace. If such was its intent and effect it is to that extent unconstitutional and void as an attempt to abridge the jurisdiction of the Supreme Court." The difficulty in this case is that in spite of the

statute the court *has* enjoined peaceful picketing and the power of the court to enjoin " dangerous, illegal acts which constituted disorderly conduct and breach of the peace " is not even challenged. The appellants ask only that the judgment be so modified that *peaceful picketing* shall not be prohibited.

By judicial decision the right to picket peacefully in order to achieve a lawful purpose in a labor dispute has been firmly established in this State. We have said that " ' picketing ' connotes no evil. It may not be accompanied, however, by violence, trespass, threats or intimidation express or implied." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 263.) In the same case we pointed out that where picketing has been accompanied by unlawful acts, an injunction may be granted to protect a complainant's rights. " This is no novel assumption of jurisdiction," we said there. " Freedom to conduct a business, freedom to engage in labor, each is like a property right. Threatened and unjustified interference with either will be prevented." (p. 265.) The right to picket peacefully for a lawful end was not created by statute and no statute, I agree, could take away from the Supreme Court its jurisdiction to grant in proper case needed protection against unlawful abuse of the right to picket.

Here unchallenged findings establish that the right to picket has been abused. The abuse indeed is so flagrant that continuance of picketing when *so conducted* would constitute an intolerable threat not only to the rights of the plaintiff but to the public peace and order. There can be no room for doubt that a court of equity has jurisdiction and power to protect the plaintiff by injunction against the threatened wrong. The question remains whether in the manner and form of the exercise of that power the court rejected regulations which the Legislature has power to impose. I differ with my associates only upon that narrow question.

The right of the individual to protection against unlawful interference with the conduct of his business through unlaw-

ful acts of others must be reconciled with the collective right of parties to a labor dispute to strike and to picket in peaceful manner. Often there is room for doubt as to the manner in which such rights should be reconciled, and the Legislature in section 876-a of the Civil Practice Act has imposed upon the exercise of the equitable powers of the court to grant injunctions in labor disputes, regulations which in the opinion of the Legislature are calculated to vindicate rights which at times seem to conflict.

In such disputes injunctions may still be issued, but in manner and form there provided. There is proviso that an injunction is to be confined to prohibition of unlawful acts, and

" (f.) That no item of relief granted prohibits directly or indirectly any person or persons from doing, whether singly or in concert, any of the following acts:  *  *  *

" (5) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, picketing, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace."

The intent and effect of the new statute is clear. It does not sanction acts previously unlawful; it does not ban acts previously lawful. It does not abridge the jurisdiction or power of the court to grant protection against acts which are unlawful but it does provide that in granting such injunction it shall leave the parties to a labor dispute free to do acts which under the decisions of this court were lawful before the statute and remain lawful after the statute was enacted. The Constitution does not prevent the Legislature from imposing such regulations so long as they leave to the courts jurisdiction and power to grant adequate and appropriate protection against wrong through · injunction confined to prohibition of unlawful acts. (Cf. *Goldfinger* v. *Feintuch*, 276 N. Y. 281, 288.)

There is in this case a finding that " the illegal conduct of defendants, their members, agents, servants, employees, and

other persons acting in aid of or in conjunction with them, has been so persistent, continuous, wanton and flagrant as to indicate the danger of continued illegal acts by said persons, and the danger of injury to plaintiffs' property and business if any picketing whatever is allowed." It is to be noted that the finding is not that " any " picketing allowed in the future *will* result in the same kind of illegal conduct but only that the illegal conduct has been " so persistent, continuous, wanton and flagrant as to *indicate the danger* of continued illegal acts." In earlier cases we have said that where there is evidence and finding that a defendant's course of conduct has been such " as to indicate the danger of injury to property if any picketing whatever is allowed," all picketing may be enjoined. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin, supra; Nann* v. *Raimist,* 255 N. Y. 307, 315.) In the latter case we said: " not improbably a writ could have been framed whereby the desired end would have been attained by prohibitions less complete. We might have preferred such restraints if we had been exercising the powers of a chancellor. Sitting in this court we deal solely with defect of power or with abuse of discretion so gross as to be equivalent to defect of power." Except for the statute these cases would give strong support to the judgment we are reviewing, but the Legislature has in effect now said to the courts that prohibition of lawful picketing shall not be granted as an item of relief where the desired end might be obtained by prohibition less complete.

There may, it is true, be cases where " violence and disturbance have been so great and threatening that peaceful picketing is *out of the question.*" (*Wise Shoe Co.* v. *Lowenthal,* 266 N. Y. 264, 268.) The statutory command is that no injunctive relief shall indirectly prohibit picketing or other method of giving publicity or information " not involving fraud, violence or breach of the peace." That, I agree, cannot prevent a court from prohibiting all picketing where in truth " peaceful picketing is out of the question." Here, I must repeat, there is no finding and perhaps no basis for a finding that an injunction against continuance of the

wrongful acts which accompanied the violence would be disobeyed or that peaceful picketing is " out of the question." The injunction ignores the statutory provisions which regulate the manner in which the court may exercise its undoubted jurisdiction to protect the plaintiffs' rights from unlawful interference by the defendants though so far as appears " the desired end would have been attained by prohibitions less complete." Though the Legislature may not abridge the jurisdiction of the Supreme Court it can no longer be questioned that it may regulate the manner of its exercise.

For these reasons the judgment should be modified to permit picketing lawfully conducted.

CRANE, Ch. J., LOUGHRAN, FINCH and RIPPEY, JJ., concur with HUBBS, J.; LEHMAN, J., dissents in opinion; O'BRIEN, J., taking no part.

Judgment affirmed, etc.