FLORSHEIM SHOE STORE CO., INC., et al., Appellants, *v.* RETAIL SHOE SALESMEN'S UNION OF BROOKLYN AND QUEENS, LOCAL 287, et al., Respondents.

Argued October 14, 1941; decided June 4, 1942.

*Julian C. Sorin* and *Milton Waxenfeld* for appellants. Respondents, having submitted to the Labor Board's jurisdiction and participated in its representation proceedings, are bound by the ensuing certification, and no labor dispute exists after such certification and the execution of a closed shop agreement with the certified union. (*Matter of Wallach's, Inc.,* v. *Boland,* 277 N. Y. 345; *Euclid Candy Co.* v. *Summa,* 174 Misc. Rep. 19; 259 App. Div. 1081; *Association of Plumbing & Heating Contractors* v. *Merten,* 173 Misc. Rep. 448; 261 App. Div. 543; *Jewish Hospital* v. " *John*

Doe," 252 App. Div. 581; *Mlle. Reif, Inc., v. Randau,* 166 Misc. Rep. 247; *Wishny* v. " *John Jones,*" 169 Misc. Rep. 459.) Respondents' picketing frustrates and violates the purpose, policy and spirit of article 20 of the Labor Law (Cons. Laws, ch. 31). ( *United Baking Co.* v. *Bakery & Conf. Workers' Union,* 257 App. Div. 501; *Association of Plumbing & Heating Contractors* v. *Merten,* 173 Misc. Rep. 448; 261 App. Div. 543.) Respondents' picketing is coercive, retaliatory, malicious and unlawful. (*Opera On Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *Murphy* v. *Ralph,* 165 Misc. Rep. 335; *Goldfinger* v. *Feintuch,* 276 N. Y. 281; *Paylay Hats, Inc.,* v. *Zaritsky,* 151 Misc. Rep. 569; *Falciglia* v. *Gallagher,* 164 Misc. Rep. 838.) Injunctive relief on the facts in the case at bar would not violate the right of free speech because there is no labor dispute. (*Thornhill* v. *Alabama,* 310 U. S. 88; *A. F. of L.* v. *Swing,* 312 U. S. 321; *Milk Wagon Drivers' Union* v. *Meadowmoor Dairies, Inc.,* 312 U. S. 287; *Senn* v. *Tile Layers' Protective Union,* 301 U. S. 468; *Matter of Triboro Coach Corp.* v. *State Labor Relations Board,* 286 N. Y. 314.)

*Samuel Null* and *Arthur K. Garfinkel* for respondents. The action involves and grows out of a " labor dispute " within the meaning and definition of section 876-a of the Civil Practice Act. Since the appellants failed to comply with the conditions precedent necessitated by section 876-a, they were not entitled to a hearing thereunder, and the appellants' motion for a temporary injunction was properly denied by the Appellate Division. (*Jeffery-DeWitt Insulator Co.* v. *National Labor Rel. Board,* 91 Fed. Rep. [2d] 134; *National Labor Relations Board* v. *Mackay Radio & Telegraph Co.,* 304 U. S. 333; *Fur Workers Union, Local No. 72,* v. *Fur Workers Union No. 21238,* 105 Fed. Rep. [2d] 1; 308 U. S. 522; *Strauss* v. *Steiner,* 173 Misc. Rep. 521; 259 App. Div. 725; *Lifshitz* v. *Straughn,* 261 App. Div. 757; *Fairbanks Cube Steak House, Inc.,* v. *Viera,* 259 App. Div. 804; *Stalban* v. *Friedman,* 259 App. Div. 520; *May's Furs & Ready to Wear, Inc.,* v. *Bauer,* 282 N. Y. 331; *Boro Park Sanitary Live Poultry Market, Inc.,* v. *Heller,* 280 N. Y. 481; *Ballis* v. *Fuchs,* 283 N. Y. 133; *Goldfinger* v. *Feintuch,* 276 N. Y. 281; *People* v. *Muller,* 286 N. Y. 281; *Milk Wagon Drivers' Union* v. *Lake Valley Farm Products, Inc.,* 311 U. S. 91; *United*

*States* v. *Hutcheson,* 312 U. S. 219; *Lauf* v. *Shinner & Co.,* 303 U. S. 323.) Wrong should not be imputed to the respondent unions because they, in conjunction with a number of the appellants' employees, declared a strike against and picketed the appellants, upon the appellants' denial of their employees' rights under the State Constitution and the Labor Relations Act and upon the appellants' refusal to permit their employees to affiliate with and bargain collectively through the respondent unions and thereby to better their working conditions. The respondent unions have the prerogative to resort to the strike and picketing. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Wise Shoe Co.* v. *Lowenthal,* 266 N. Y. 264; *Nann* v. *Raimist,* 255 N. Y. 307; *Stillwell Theatre, Inc.,* v. *Kaplan,* 259 N. Y. 405; *May's Furs & Ready to Wear, Inc.,* v. *Bauer,* 282 N. Y. 331; *Strauss* v. *Steiner,* 173 Misc. Rep. 521; 259 App. Div. 725; *Fur Workers Union, Local No. 72,* v. *Fur Workers Union No. 21238,* 105 Fed. Rep. [2d] 1; *National Protective Assn.* v. *Cumming,* 170 N. Y. 315; *J. H. & S. Theatres, Inc.,* v. *Fay,* 260 N. Y. 315; *Interborough Rapid Transit Co.* v. *Lavin,* 247 N. Y. 65.) The temporary injunction was improperly granted at Special Term and was correctly reversed by the Appellate Division. (*Hague* v. *Committee for Industrial Organization,* 307 U. S. 496; *Schneider* v. *New Jersey,* 308 U. S. 147; *Thornhill* v. *Alabama,* 310 U. S. 88; *American Federation of Labor* v. *Swing,* 312 U. S. 231; *Carlson* v. *California,* 310 U. S. 106; *Miller's, Inc.,* v. *Journeymen Tailers Union,* 128 N. J. Eq. 162; 312 U. S. 658; *Milk Wagon Drivers' Union* v. *Meadowmoor Dairies, Inc.,* 312 U. S. 287; *Senn* v. *Tile Layers Protective Union,* 301 U. S. 468; *People* v. *Muller,* 286 N. Y. 281; *May's Furs & Ready to Wear, Inc.,* v. *Bauer,* 282 N. Y. 331; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260.)

RIPPEY, J. This is an action in equity by plaintiffs, who operate twelve retail stores in New York and Brooklyn, to restrain the defendants from picketing their premises in this State and from the performance of other coercive, oppressive and unlawful acts. The defendants are labor unions affiliated with the Congress of Industrial Organization. No answer has been interposed to the complaint. However, it is alleged in the complaint that no " labor

dispute " exists and it appears that such proceedings have not been taken by plaintiffs as would be required preliminary to the granting of an injunction in the event that the controversy involves a " labor dispute " within the words and meaning of section 876-a of the Civil Practice Act. Upon the complaint and affidavits, Special Term granted an injunction *pendente lite*. Upon appeal, the Appellate Division, by a divided court, reversed on the law and denied the motion for preliminary injunction on the ground that the complaint, on its face, was insufficient in law and certified to us the question " Does the complaint state facts sufficient to constitute a cause of action? "

In a determination of that question we must consider, as respondents contend, not alone the allegations of the complaint but the assertions of affiants in the various affidavits contained in the record tending to support or negative the allegations of the complaint (*Interborough Rapid Transit Co.* v. *Lavin*, 247 N. Y. 65). The Appellate Division did not dismiss the complaint. By necessary implication, the certification by the Appellate Division of a question of law indicates that the denial of relief in that court was not in the exercise of discretion (*Braunworth* v. *Braunworth*, 285 N. Y. 151). To sustain the order from which the appeal is taken, we must find that the allegations of the complaint and affidavits and reasonable inferences therefrom when considered in aspect most favorable to plaintiffs are insufficient as matter of law to sustain a cause of action. There was no reversal of any finding of fact deemed by Special Term necessary to sustain the injunction. We, therefore, determine whether, as matter of law upon the record now presented, the plaintiffs can succeed. If so, we must reverse the order of the Appellate Division and reinstate the order of the Special Term (*Woicianowicz* v. *Philadelphia & Reading Coal & Iron Co.*, 232 N. Y. 256; *Partola Mfg. Co.* v. *General Chemical Co.*, 234 N. Y. 320; *Mitchell, Inc.*, v. *Dannemann Hosiery Mills*, 258 N. Y. 22; *Matthews* v. *Truax, Carsley & Co.*, 265 N. Y. 6).

The decisive question here, upon the basis above outlined, is whether the facts show that at the time of the commencement of this action a " labor dispute " existed between the parties within the meaning and intent of the provisions of section 876-a of the Civil Practice Act in view of the declared legislative policy of the State.

The controversy has at all times been essentially jurisdictional — based upon a contest between rival unions to determine which should be recognized by plaintiffs as collective bargaining agent for plaintiffs' employees. On the one side was the Retail Shoe Salesmen's Union, Local 1115F, A. F. of L., and on the other side were Retail Shoe Salesmen's Union, Locals 1268 and 287, C. I. O. For the purposes of this case we assume without deciding that the controversy started out as a " labor dispute " between the parties to this action within the meaning of section 876-a of the Civil Practice Act.

Defendants claim that in 1938 and the early part of 1939 the plaintiffs sponsored and dominated a company union under the name of the Florsheim Retail Shoe Employees Protective Union, which, on April 18, 1939, petitioned the New York State Labor Relations Board for investigation and certification of representatives for collective bargaining, pursuant to section 705 of the New York State Labor Relations Act (Labor Law, art. 20 [Cons. Laws, ch. 31]). On May 8, 1939, the defendant unions filed with the Board charges of unfair labor practice, pursuant to section 706 of the act, in which they accused the plaintiffs, among other things, of having sponsored that union and of having intimidated and coerced their employees into joining that union and into refraining from joining and into resigning from the defendant unions. Thus an issue was then raised before the Board as to the propriety of granting the petition of the so-called company union for investigation and certification of a bargaining agent. However, on June 5, 1939, the defendant unions withdrew those charges with the reservation, however, of a right to renew at a later date and to interpose those charges as a *defense to the proceeding* for investigation and certification. Thereupon, defendants called a strike and caused seventeen of plaintiffs' employees to go out as a means more promptly and effectively to bring plaintiffs to terms. Defendants, as justification for the strike, asserted that plaintiffs interfered with, restrained and coerced their employees in their right of self-organization in the defendant unions, in their right to join and assist the defendant unions, in their right to bargain collectively through the defendant unions, in their right to engage in concerted activities through the defendant unions for the purpose of

collective bargaining and other mutual aid and protection and refused to enter into contractual relations with the defendant unions. It was asserted that plaintiffs had been employing workers who were not members of the defendant unions, defendants had been unable to unionize the plaintiffs' shops and that defendant unions could better improve the lot of plaintiffs' employees by being the collective bargaining agent than the rival union.

On June 23d hearings upon the petition for investigation and certification were begun by the Board. On December 12, 1939, the Retail Clerks International Protective Association, affiliated with the American Federation of Labor, having absorbed the alleged company Protective Union, filed a petition for its affiliate, Retail Shoe Salesmen's Union, Local 1115F, A. F. of L., and was permitted to intervene in the proceeding and be substituted in the place of the Protective Union. It is alleged in the complaint and confirmed by the record that a controversy there existed concerning the representation of certain employees, that Retail Clerks International Protective Association claimed to represent a majority of plaintiffs' employees while defendant Locals 287 and 1268 claimed to represent certain employees and that Retail Clerks International Protective Association requested the Board to investigate such controversy pursuant to the provisions of the New York State Labor Relations Act and certify the name of the representative designated and selected by plaintiffs' employees for the purpose of collective bargaining. Thereupon, the defendant unions again intervened and deemed it necessary to refile with the Board charges of unfair labor practice in that proceeding in answer to the petition. From then on numerous hearings were had in which the defendants appeared by counsel, made moves to stay the hearing on the petition and called witnesses who testified on the issue raised by their answer.

Summarizing defendants' position throughout, the charges related only to the propriety of certifying a collective bargaining agent in the pending proceeding for certification and were, substantially and essentially, the answer of the defendant unions to the petition therefor and so recognized. No complaint was ever issued upon the charges nor was effort seriously made to secure the issuance of any such complaint. The contention of the defendants

was that Local 1115F was dominated by the plaintiffs, that the plaintiffs were so interfering by coercive and improper measures that it would be unjust to require the holding of an election to determine a representative for collective bargaining, and that a fair election could not be held in view of the conduct of the plaintiffs toward their employees. There was not even a pretense made by defendants that the charges of unfair labor practice were separate and distinct and separately identified from the proceeding instituted by their rival union for investigation and determination of a collective bargaining agent and the Board so understood the situation. The alleged illegal activities of the plaintiffs were fully litigated before the Board, in fact, that was practically the entire subject of litigation, approximately 1,600 of the 1,800 pages of the record being devoted to testimony and hearings upon that particular question. The Board found that there was no evidence in the record indicating any activities on the part of plaintiffs subsequent to April, 1939, hostile to the free exercise of their employees of their right freely to select a bargaining representative of their own choosing. Nevertheless, upon evidence presented by plaintiffs to the effect that they would not coerce or intimidate their employees, spy upon them, interfere with the formation of any employee organization, encourage membership in a company union, or discourage membership in any union by discrimination or do any acts which would interfere with, restrain or coerce their employees in the exercise of the rights guaranteed them by the act and would agree that their employees should have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint or coercion of their employers, the Board caused a notice to that effect to be posted as a condition precedent to the holding of the election. Upon the record as a whole, after giving full weight to the charges and supporting evidence of defendants that, in view of the unfair and coercive conduct of plaintiffs there could be no free and open election, the Board found that there was no circumstance which would interfere with the free exercise of the wishes of plaintiffs' employees in the election of a collective bargaining

agent and the subsequent execution of an employment contract. Since there was evidence to support the finding and it was made according to due process by an agency with jurisdiction to make the determination, after voluntary submission of the parties and issues to the Board, it was binding and conclusive on the parties to the proceeding and upon the courts and, by the terms of the act, conclusive on the employers.

An election was directed and held under the supervision of the Board in accordance with the provisions of the New York State Labor Relations Act " to determine whether [the said employees] desire to be represented for the purposes of collective bargaining by Retail Shoe Salesmen's Union Local 1115F, A. F. of L., or by the Retail Shoe Salesmen's Union Locals 1268 and 287, C. I. O., or by neither of these organizations," with the result that of those eligible to vote from the appropriate unit the employees of appellants selected by a vote of more than two to one the first above named local union. No objections were filed to the submission, to the conduct of the election or to the result. In accordance with the provisions of the act, the Board thereupon certified on July 2, 1940, that local as " the exclusive representative of all such employees for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment," and the certification remained in effect for one year after its date (Rule 34, General Rules and Regulations of the New York State Labor Relations Board). Thereupon, the appellants and their employees, through the certified agent, duly entered into an agreement dated July 14, 1940, covering wages, hours and conditions of employment, by its terms to remain effective for one year, by which all labor disputes between the employers and their employees then existing were settled and adjusted.

When the contract was executed by appellants and the duly certified agent of the employees and went into effect, any labor dispute within the provisions of the New York State Labor Law ended and the contract as made was the sole enforceable contract between employers and employees (Cf. *Matter of Triboro Coach Corp.* v. *New York State Labor Relations Board*, 286 N. Y. 314). Such a result is the only conclusion possible in consonance and

harmony with the public policy of the State as declared in the Labor Relations Act which was to prevent or bring to an end strikes and other forms of industrial strife and unrest and to encourage and effect industrial peace among employers and employees (*United Baking Co.* v. *Bakery & Confectionery Workers' Union*, 257 App. Div. 501). The Legislature did not intend or propose that the procedure provided for that purpose should be meaningless or that it might be flaunted and made meaningless by a minority group of employees, who, themselves, had invoked the procedure to settle their dispute. The intent and purpose of the Legislature was to provide procedure for the disposal of labor controversies which, when adopted and availed of by parties to those controversies, *should end disputes, not continue them.*

Notwithstanding all those proceedings and the negotiation and execution of the contract by the representative who was duly named as the exclusive agent of all of the employees of appellants, the defendants, the plaintiffs' complaint sets forth, " have continued, are continuing and are threatening to continue to picket and patrol in front of plaintiffs' stores, and to approach, molest and shout at plaintiffs' customers and potential customers." Under the second cause of action, plaintiffs plead a conspiracy by defendants " to boycott and picket plaintiffs and to picket and patrol in front of their stores in order to injure plaintiffs and ruin and destroy their business, property and Good Will; to interfere with plaintiffs' contract with Retail Shoe Salesmen's Union, Local 1115F, A. F. of L.; to exert pressure upon plaintiffs to breach their aforesaid contract with said Union; to coerce plaintiffs into violating the New York State Labor Relations Act, and to punish plaintiffs and retaliate against plaintiffs for not having entered into a collective bargaining agreement with Defendants Local 287 and Local 1268 " and that in pursuance thereof they have " wilfully and maliciously boycotted plaintiffs and have wilfully and maliciously picketed and patrolled, and continue to picket and patrol in front of plaintiffs' stores and to approach, molest and shout at plaintiffs' customers and potential customers, and have wilfully and maliciously, in a misleading manner, created the impression that plaintiffs are unfair to their employees and to organized labor and that a labor dispute exists between plaintiffs and their employees * * * all to

plaintiffs' irreparable damage and detriment, for which plaintiffs have no adequate remedy at law."

In the affidavits upon which the allegations of the complaint were overwhelmingly and without contradiction sustained it appeared that the acts and conduct of the defendants both before and after the election and after the execution of the contract were in continual wilful, intentional and malicious defiance of the jurisdiction of the Labor Relations Board rightfully obtained of any labor dispute that existed between the parties and of the determination and decision of the Board and for the purpose of punishing the plaintiffs, of hurting and crippling and, if possible, of ruining their business, property and good will and of compelling them to violate their contract with their employees entered into honestly, legally and in accord with the provisions and purpose of the Labor Relations Act. In the monthly magazine, the " Retail Shoe Clerk's Digest," the official organ of defendant Local 287, it was said: " Election or no election, we can thank God that we still will have the right to picket. And this vicious anti-labor shoe company will continue to get a bigger and better picket. As a matter of record, never in the history of our existence have we ever taken a picket off a store until our cause was won. And we don't intend to remove the Florsheim pickets until our objectives are gained." In the issue of that magazine in September, 1940, it was said: " Florsheim strike now more alive than ever  *  *  *  The men on the Florsheim Picket Line have quite courageously picketed under all sorts of conditions — the line still holds. Let us now get right behind them. Let's help advertise to the world that the owners of Florsheim Shoes would rather keep their New York enterprise as an agency for advertising purposes — an expensive loss at that — rather than recognize a bona fide union." In September, 1940, in another article proceedings before the Labor Board were repudiated and it was said: " It has become increasingly clear that our fight with the owners of Florsheim Shoes has just begun." With reference to the jurisdictional dispute, in one article it was said: " It is very essential that our membership do their part in prohibiting the A. F. of L. from gaining a wedge into the retail shoe field." In written articles as well as in official resolutions defendants urged the establishment and spreading by union members

and their friends of a boycott of plaintiffs. Again they referred in one of their written articles to the effect of relentless day-by-day picketing, daily radio broadcasts, mass demonstrations, the cutting of the revenue of the stores and otherwise the injuring of plaintiffs' business. Mass demonstrations were described where they used placards advertising the Florsheim strike and pamphlets appealing to the public to boycott Florsheim stores. Attempt was made to coerce plaintiffs' customers to refrain from doing business with them both orally through the pickets and in writing. Plaintiffs were placed on lists unfair to labor. Much of the foregoing done or attempted to be done in writing was done orally by the pickets. Ample evidence is found of a conspiracy to ruin plaintiffs' business so far as was within defendants' power. They attempted to create the false impression that a labor dispute existed between the plaintiffs and their employees and their representatives and they represented that all of plaintiffs' regular employees were out on strike and that the plaintiffs were unfair to organized labor, all of which representations were utterly false. The announced objective was to compel plaintiffs, in spite of the wishes of the great majority of their employees and the execution of the collective bargaining contract, to enter into a closed shop agreement with the defendants and to compel the recognition of the defendants as the sole and exclusive bargaining agent. Similar articles were contained in the " Shoe Reporter," the official organ of Local 1268. There were many statements similar to the above, detailed reference to which time and space prohibit here.

On the record here presented it is impossible for the respondents successfully to maintain that any " labor dispute " between plaintiffs and defendants theretofore existing under section 876-a of the Civil Practice Act survived the certification by the Labor Relations Board of the collective bargaining agent for plaintiffs' employees and the execution of the collective bargaining contract. Nothing in this opinion is designed to interfere with, impede or diminish in any way the right of employees lawfully to strike or engage in other lawful concerted activities or leave plaintiffs' employ if they so desire, nor do we recede from principles relating thereto laid down in earlier decisions of the court. The action here is to restrain unlawful actions and their threatened continuance not governed by pro-

cedure other than a general action in equity (Compare *Busch Jewelry Co.* v. *United Retail Employees' Union*, 281 N. Y. 150). It was unlawful, upon the record in this case, for the defendants to continue or renew or to threaten to continue picketing of appellants' shops for the reason that the minority were dissatisfied with the result of the election and with the terms of the contract duly negotiated and entered into between the appellants and the duly certified representative of the employees. The picketing here and its threatened continuance was wilful, malicious, coercive, and accompanied by acts of intimidation. It was unlawful for defendants to conspire and by overt acts to carry such conspiracy into effect under the circumstances and conditions indicated, and to threaten the continuance thereof for the purpose and with the design and effect of injuring and, if possible, of ruining plaintiffs' business, property and good will. It was unlawful for defendants falsely to represent and to threaten to continue falsely to represent that plaintiffs were unfair to organized labor, that a labor dispute existed between the plaintiffs and their employees and that all of plaintiffs' employees were out on strike. These and various other unlawful coercive, oppressive and malicious acts of the defendants as shown by the record and their threatened continuance under similar conditions were subject to judicial restraint in an action such as plaintiffs have brought (*Interborough Rapid Transit Co.* v. *Lavin*, *supra; Busch Jewelry Co.* v. *United Retail Employees' Union*, *supra; Matter of Triboro Coach Corp.* v. *New York State Labor Relations Board*, *supra: Opera-on-Tour*, *Inc.*, v. *Weber*, 285 N. Y. 348; *Carpenters & Joiners Union of America* v. *Ritter's Cafe*, 315 U. S. 722).

The decision in the case of *Stillwell Theatre, Inc.*, v. *Kaplan* (259 N. Y. 405) is clearly distinguishable and is not in point. The policy of the State with reference to settlement of labor disputes or in regard to the methods of selection of a collective bargaining agent had not then been declared by the Legislature as we now find it. Neither section 876-a of the Civil Practice Act nor the Labor Relations Act had then been enacted. Furthermore, in that case the employer voluntarily entered into a contract which was the subject-matter of the case with one union to the exclusion of its rival. There it was found that the picketing was not accompanied by acts of violence, trespass or intimidation.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

The certified question should be answered in the affirmative.

DESMOND, J. (dissenting). It is no function of ours to decide whether defendants' picketing is unfair or anti-social, or whether attitudes like those taken by defendants tend to promote and prolong industrial strife and make more difficult the achievement of industrial peace. Such questions are for other forums. Our inquiry is this narrow one: Does this complaint state a cause of action for injunctive relief? Narrowing the question even more, we need only examine the pleading to see if the facts it sets forth spell out a labor dispute; for if the controversy, so pleaded, is a labor dispute, then plaintiffs, by failing to allege compliance with section 876-a of the Civil Practice Act, have made it impossible for the courts, obeying the command of that section, to grant them an injunction.

Justifying the issuance of an injunction here, the majority opinion holds that the signing of the contract between plaintiffs and the union theretofore duly certified by the State Labor Relations Board, had the effect of ending the labor dispute previously existing between plaintiffs and their employees. In this connection we are referred to *Matter of Triboro Coach Corp.* v. *New York State Labor Relations Board* (286 N. Y. 314). There is no such holding in that case. Both the majority (286 N. Y. at p. 322) and the minority opinions (286 N. Y. at p. 344) point the other way. All the decisions of this court in parallel situations, for years back, forbid the kind of injunction sought here, and the labor relations statutes of this State (Civ. Prac. Act, § 876-a, and Labor Law, art. 20) have not overruled those cases in any manner whatever.

Strikes involving inter-union rivalry are unfortunate at any time, and certainly not in the public interest in times like these. But this court has for forty years, since *National Protective Association of Steam Fitters & Helpers* v. *Cumming* (170 N. Y. 315), uniformly held that such strikes are not illegal. We have flatly and positively held that peaceful and truthful picketing by a union may not be enjoined on the ground that its purpose was to induce

or cause a breach of a contract between an employer and a rival union. (*Stillwell Theatre, Inc.*, v. *Kaplan*, 259 N. Y. 405.) In *Nann* v. *Raimist* (255 N. Y. 307) we denied the existence of any power in the courts to enjoin announcements by a labor union to the world that another labor union was not an effective representative of the employees, or to enjoin picketing by one union in an effort to win away from another union the allegiance of employees and the favor of the employer and his customers, even when there was no strike in progress. A labor union may strike and picket the premises of an employer to induce him to employ its members, although that union has no members among his employees. (*Exchange Bakery & Restaurant Inc.*, v. *Rifkin*, 245 N. Y. 260; *May's Furs & Ready-to-Wear, Inc.*, v. *Bauer*, 282 N. Y. 331.) It cannot possibly be claimed that our state anti-injunction statute (Civ. Prac. Act, § 876-a), with its broad definition of " labor dispute " and its prohibition of injunctive relief against peaceful picketing, has overruled those cases. " The effect of that statute is to prevent courts from enjoining peaceful picketing." (*Busch Jewelry Co.* v. *United Retail Employees' Union*, 281 N. Y. 150, 156.) In the *Fur Workers* case (308 U. S. 522) the United States Supreme Court has decided that the Norris-LaGuardia Act (U. S. Code, tit. 29, § 101, *et seq.*), the prototype of our section 876-a, deprived the Federal courts of all jurisdiction to enjoin peaceful picketing by a union, even when its successful rival had concluded an agreement with the employer.

Plaintiffs claim that our State Labor Relations Act (Labor Law, art. 20) somehow justifies or authorizes an injunction here. No one contends that this act repealed section 876-a; the two statutes are in *pari materia* and to be read together. Plaintiffs, in asserting that the procedures established by the Labor Relations Act, when invoked in a labor dispute, have, necessarily, the effect of bringing the dispute to an end, ascribe to the act a coverage much too broad. That act nowhere provides that all industrial strife and dispute are forbidden, once resort is had to the State Labor Relations Board. On the contrary, it says in so many words that " nothing in this article shall be construed so as to interfere with, impede or diminish in any way the right of employees to strike or engage in other lawful, concerted activities." (Labor

Law, § 713.) Thus the prohibitions in our decisions, against such injunctions, were reaffirmed — not overruled — by the Labor Relations Act. Such injunctions are still forbidden, by binding precedents of leading cases and by express provisions of statute.

The Legislature, in the statement of " Findings and Policy " (Labor Law, § 700) with which it prefaced the substantive matter of the Labor Relations Act, refers to the then existing inequality of bargaining power as between employer and individual employee, to the denial by some employers to their employees of the right to freedom of organization, to the refusal of some employers to recognize the practice and procedure of collective bargaining, and to the effect of such denials and refusals in leading to strikes, lockouts and other forms of industrial strife. This legislative statement of " Findings and Policy " asserts that protection by law of the right of employees to organize and bargain collectively " removes certain recognized sources of industrial strife and unrest." It is declared by the Legislature to be the public policy of the State to encourage and promote collective bargaining and self-organization of employees, free from coercion or restraint by employers.

To achieve these laudable purposes the Legislature, in the succeeding sections of the Labor Relations Act, set up a Labor Relations Board, described certain unfair labor practices by employers and empowered the Board to investigate and redress such practices. The act further authorized the Board to hold elections to determine who or what should be the bargaining agent of a group of employees, and to order an employer to bargain collectively with the agent so elected. So far, and no further, did the Legislature go in conferring power on the Board. The closed shop agreement made with the bargaining agent certified by the Board has no more validity, standing or effect than a similar agreement made with a bargaining agent not certified but otherwise authorized, and, as we have pointed out above, such a closed shop agreement does not justify an injunction against peaceful and truthful picketing by the unsuccessful union.

Nor did the Labor Board here, in certifying as a bargaining agent the union successful at the election, attempt to hand down a judgment determining the whole labor dispute between plaintiffs and their employees. The Labor Board issued no injunction against

defendants. Acting within the precisely fixed limits of its jurisdiction, the Board certified that another union had been chosen by the majority of plaintiffs' employees as bargaining agent for all those employees. Then and there the Labor Board's powers came to a full stop. Defendants' guaranteed rights of peaceful persuasion and public statement of its claims and purposes continued as before.

This court has said so often that it will do no harm to say it again, that the right of workmen to organize and agitate, peacefully, to better their conditions, will not be destroyed or diminished but will be protected by the courts despite incidental injury to an employer's business. (*Stillwell Theatre, Inc.*, v. *Kaplan*, *supra*, at p. 409.) " It is not within the province of the courts to restrain conduct which is within the allowable area of economic conflict." (*Stillwell Theatre, Inc.*, v. *Kaplan*, *supra*, at p. 412.)

In voting to affirm the Appellate Division and to refuse an injunction here, we are not put to the necessity of justifying, or excusing, the conduct of the defendants. Perhaps they should have accepted in good faith the results of the election, let the new contract have a fair trial, swallowed their defeat, and put away their picketing signs. But it is a right, and not manners, or sportsmanship, that we are concerned with. The right to picket peacefully is guaranteed by the Constitution of the United States as an incident to freedom of speech. " Freedom of speech  *  *  *  is the matrix, the indispensable condition, of nearly every other form of freedom." (*Palko* v. *Connecticut*, 302 U. S. 319, 327.)

The certified question should be answered in the negative, and the order of the Appellate Division affirmed, with costs.

FINCH, LEWIS and CONWAY, JJ., concur with RIPPEY, J.; DESMOND, J., dissents in opinion in which LEHMAN Ch. J., and LOUGHRAN, J., concur.

Ordered accordingly.