Van Voorhis, J.
(dissenting). Plaintiff is a wholesaler of butter, eggs, cheese and kindred products. Defendants Papa and Dorf are president and secretary of Commission Drivers and Chauffeurs Local 202, International Brotherhood of Teamsters, affiliated with the American Federation of Labor. Since September 24, 1945, an organizational campaign has been conducted by defendant union in order to enroll plaintiff’s drivers as members thereof. It was stipulated at the trial by counsel for defendants that none of plaintiff’s employees had joined this union. Plaintiff offered to submit to an election concerning whether its drivers desired defendant union to become their exclusive bagaining agent, but the union did not acquiesce and no election has been held. There appears to be no controversy over wages, hours or working conditions. The union grievance is twofold, (1) against plaintiff’s employees, rather than plaintiff, for not joining Local 202, and (2) against plaintiff for not having signed a contract with defendant union as the bargaining agent for its drivers.
Since September 24, 1945, plaintiff has been picketed as “ Unfair To Organized Labor Local 202 I. B. of T. Affiliated with the A. F. of L.” The representatives of Local 202 have also called upon other unions to decline to handle plaintiff’s merchandise, stating in this connection that plaintiff and its subsidiary', Viking Butter Co., Inc., are the only two substantial firms not yet organized and with whom Local 202 has no contracts. This has seriously interfered with plaintiff’s business by preventing various cold storage warehouses and others from handling plaintiff’s perishables. Indeed, such concerted action even prevented plaintiff from obtaining goods which had been placed in storage before the picketing began, notwithstanding that such merchandise was demanded by deputy sheriffs under legal process in an action for replevin.
In the foreground of this litigation is the question whether section 876-a of the Civil Practice Act is applicable, relative to injunctions in labor disputes. Section 876-a does not applv unless this is in fact a labor dispute, which in turn depends upon whether the activity sought to be restrained has a lawful labor objective (Opera-on-Tour, Inc., v. Weber, 285 N. Y. 348; American Guild of Mus. Artists v. Petrillo, 286 N. Y. 226; Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, 288 N. Y. 188; Dinny & Robbins, Inc., v. Davis, 290 N. Y. 101; Euclid Candy Co. of New York, Inc., v. Summa, 174 Misc. 19, affd. 259 App. Div. 1081).
In the case of organizational activity carried on prior to the adoption of the labor relations acts, it was held that picketing or striking for the purpose of unionizing an economic enterprise (May’s Furs & Ready-to-Wear, Inc., v. Bauer, 282 N. Y. 331) and enlisting the aid of other unions to refuse to handle nonunion goods (Bossert v. Dhuy, 221 N. Y. 342) were legitimate measures to assist in an organizational campaign. Economic pressure by strike or boycott, as an instrument to compel an employer to hire only union labor, was regarded as a proper weapon to offset or counteract the power of the employer to discharge union help and to make use of the other coercive devices to discourage unionization which are now forbidden to the employer by the labor relations acts. But by the *906 same enactments whereby it is made an unfair labor practice for an employer to discourage union activity by coercive measures, it is also forbidden to employers to use such measures so as to exhibit partiality toward any labor organization, where such partiality might tend to influence employee choice of bargaining representatives. Neutrality is exacted from employers in union affairs, at least where the exertion of pressure is involved.
One of the types of favoritism frequently condemned as a violation of subdivision (1) of section 8 of the National Labor Relations Act (U. S. Code, tit. 29, § 158, subd. [1]; see New York State Labor Relations Act [Labor Law, art. 20], §-704) is the premature recognition of a union as exclusive bargaining representative. By agreeing to bargain with a union before it has established itself as the choice of a majority of employees in the appropriate bargaining unit, employers give authority and prestige to that union, thus tending to influence employee choice in violation of- these acts. The most flagrant violation occurs when the contract is of the closed shop variety, for then the employee must either join the union or be discharged and the coercion thus becomes extremely rigorous (National Labor Relations Board v. John Engelhorn & Sons, 134 F. 2d 553). In both the National and New York State labor relations acts it is defined to be an unfair practice for an employer, by discrimination in regard to hire or tenure of employment or any term or condition of employment, to encourage or discourage membership in labor organizations. An employer is expressly prohibited by both acts from making an agreement with a labor organization requiring as a condition of employment membership therein, unless such labor organization has been recognized by the employees as its bargaining representative. .(National Labor Relations Act, § 8, subd. [3]; U. S. Code, tit. 29, § 158, subd. [3]; New York State Labor Relations Act [Labor Law, art. 20], § 704, subd. 5). Although there has been no election at plaintiff’s plant owing to the circumstance that defendant union apparently did not want one, it is manifest that plaintiff’s employees prefer no union to being represented by Local 202. No employee has joined after a long organizational campaign. There is no contention in this record that plaintiff has been guilty of unfair labor practices in preventing any of its employees from joining Local 202; the conclusion must he drawn from the facts before the court that of their own free will they did not choose to join this union. The union grievance against plaintiff, as stated in the telegram of its president to Local 229 in Scranton, is that plaintiff has not made a labor contract with Local 202. In other words, the grievance is that plaintiff has refused to recognize as bargaining agent for its drivers a labor organization which they have clearly indicated that they do not want to have represent them. Doubtless, it would have been of assistance to the union in its organizational campaign for plaintiff to have made such a contract, particularly if it contained the customary union shop clause requiring the employer to discharge employees who do not join the union after the lapse of a limited time. Nevertheless for an employer to contract with the union as the bargaining agent of employees, none of whom belong to it, and who have unmistakably signified that they do not want it to represent them, would in itself be an unfair labor practice under the National and State acts.
The defendants are thus bringing economic pressure to bear upon the plaintiff, not to prevent it from engaging in unfair labor practices but to compel it to do so to defendant’s advantage. That is not a legitimate labor objective. The inscription on the signs carried by the pickets that plaintiff is unfair to Local 202 is untrue (Wilner v. Bless, 243 N. Y. 544). Plaintiff is not being unfair to Local 202 by refraining from engaging in unfair labor practices for its *907 benefit, nor can concerted action, in combination with warehousemen’s unions, be taken lawfully to compel plaintiff to do so. It would be as much an unfair labor practice for an employer to compel employees to be represented by a particular union when they have chosen to be represented by no union, as for it to have bargained collectively with an unsuccessful union following the election of a different union as the collective bargaining agent (Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, 288 N. Y. 188, supra; Dinny & Robbins, Inc., v. Davis, 290 N. Y. 101, supra; Euclid Candy Co. of New York, Inc., v. Summa, 174 Misc. 19, affd. 259 App. Div. 1081, supra). Injunctions were issued in those cases to restrain unsuccessful unions from seeking to compel the employer to deal with them as employee representatives; defendant herein should be enjoined from similar practices where the employees have signified that they wish to be represented by no union.
The judgment should be reversed, with costs, and an injunction issued enjoining defendants from engaging in concerted action among themselves or with other unions in boycotting the handling or consumption of plaintiff’s suppliers or products or from picketing plaintiff as unfair to Local 202, or to labor, for the purpose of compelling plaintiff to sign a labor contract with Local 202 as collective bargaining agent for its drivers, since there is no labor dispute with plaintiff. Truthful and peaceful picketing of plaintiff’s employees should be permitted, so as to publicize to them the advantages which defendants claim they will derive from joining the union.
Cohn, Callahan and Peck, JJ., concur in decision; Van Voorhis, J., dissents in opinion.
Judgment affirmed, with costs. No opinion.