Edward G. Baker, J.
Plaintiff conducts a “ drive-in ” restaurant in Richmond County. It brings this action to restrain and enjoin the defendants, Local 15, Bartenders Union of New York City (AFL) and Local 89, Chefs, Cooks, Pastry Cooks and Assistants Union (AFL) from picketing plaintiff’s establishment and for other relief. (The defendants are hereinafter referred to as Local 15 and Local 89.)
Shortly before Labor Day, 1956, one Roca, a business agent and organizer for defendant unions, approached John Primiano, an officer of plaintiff, and demanded that he sign, in plaintiff’s behalf, agreements recognizing the two unions as the sole bargaining agents for the two categories of plaintiff’s employees. He represented that the employees were members of the unions and threatened that, unless the agreements were signed at once, a picket line would be thrown about plaintiff’s establishment. Primiano was given no opportunity (although he requested it) to ascertain the truth or falsity of Boca’s representations. They were, in fact, false. Neither union, then or at any other time, represented any of plaintiff’s employees?
The agreements were executed by Primiano early in September, 1956. One provided for commencement of negotiations for a contract by September 18, 1956, the other for consummation of a collective bargaining agreement on or before that date. Neither union contended upon the trial that these so-called recognition agreements had any validity, or were, in any respect, binding upon the plaintiff. The casual negotiations and discussions between the unions’ and plaintiff’s representatives which followed were fruitless, as they were doomed to be from the start.
On or about November 30, 1956, the defendant unions established picket lines about plaintiff’s place of business. The legends on the signs carried by the pickets read as follows:
“WORKERS OF COSMOS DRIVE INN ARE LOCKED OUT. CHEFS, COOKS, PASTRY COOKS AND ASSISTANTS, LOCAL 89, 981-8th AVE., AFFILIATED WITH AMERICAN FEDERATION OF LABOR. PLEASE DON’T PATRONIZE.
“THE EMPLOYEES OF COSMOS DRIVE INN ABE LOCKED OUT. BARTENDERS LOCAL 15, NEW YOBK CITY, 30 EAST 29th ST., MU 6-3515. AFFILIATE (SIC) WITH NEW YOBK STATE FEDERATION OF LABOB, CENTRAL TRADES AND LABOR COUNCIL. PATRONIZE ONLY SUCH ESTABLISHMENTS WHERE THE BARTENDERS DISPLAY THE ABOVE UNION BUTTON.”
*241 The signs were false and misleading. There was no lockout. Neither union represented any employee of plaintiff. There is no evidence that any employee had been discharged by reason of having joined either union, or by reason of having signified intent to join. There is no proof that plaintiff did anything to encourage or discourage union membership, or that it interfered, in any manner, with its employees in the exercise of their judgment.
On or about January 18, 1957, the International Industrial Union, Local 150 (hereinafter referred to as Local 150), filed with the New York State Labor Relations Board its amended petition for investigation and certification of representatives pursuant to section 705 of the New York State Labor Relations Act (Labor Law, art. 20). It was therein alleged that the union (Local 150) represented a majority of plaintiff’s employees in a unit appropriate for the purposes of collective bargaining, and that plaintiff questioned the said union’s majority status. Notice of hearing for February 7, 1957 was duly served upon plaintiff, Local 150 and its attorneys; intervention notice of hearing was duly served upon Locals 15 and 89 and their respective attorneys. Notices of intervention were thereafter filed in behalf of Locals 15 and 89. Local 15 attended at and participated in the hearings which were held on February 8 and 11, 1957.
Early in March, 1957, the hearing officer filed his decision in the matter in which he concluded, inter alia, upon the basis of the proof before him, that Local 150 was a labor organization in fact and within the meaning of subdivision 5 of section 701 of the act. He directed an election by secret ballot for the purpose of determining whether plaintiff’s employees desired to be represented by Local 150 for the purposes of collective bargaining. Local 15 moved for rescission of the decision and for reopening of the hearing. The motion was denied and it was ordered that the election previously directed proceed within 10 days.
The election was held on May 16, 1957, by secret ballot, under the supervision of an agent of the labor board. There was one challenged ballot. The final result of the vote was 10-0 in favor of Local 150. On June 4, 1957, Local 150 was certified by the board as the exclusive representative of plaintiff’s employees for the purposes of collective bargaining. Since that date, negotiations have been in progress between plaintiff’s representative and that of Local 150 with respect to wages and hours and other terms and conditions of employment. Agreement *242 between them already has been reached upon most of the essential terms of a contract. Differences upon other essential terms remain unresolved.
On or about May 8, 1957, the legends on the signs carried by the pickets were changed to read as follows:
“WORKERS OF COSMOS — JOIN LOCALS 15 AND 89 AND GET BETTER WORKING CONDITIONS FOR. YOURSELVES AND YOUR FAMILIES. CHEFS, COOKS, PASTRY COOKS AND ASSISTANTS UNION, LOCAL 89. PLEASE DON’T PATRONIZE.
“ EMPLOYEES OF COSMOS —THIS EMPLOYER PAYS LESS WAGES AND OTHER TERMS OF EMPLOYMENT THAN EMPLOYERS UNDER CONTRACT WITH LOCALS 15 AND 89. BARTENDERS LOCAL 15, NEW YORK CITY. PATRONIZE ONLY SUCH ESTABLISHMENTS WHERE THE BARTENDERS DISPLAY THE ABOVE UNION BUTTON.”
The proof shows that the wages, hours and working conditions presently prevailing in plaintiff’s establishment are less favorable to its employees than those prevailing in comparable establishments in Richmond County which have already been organized by Locals 15 and 89.
It has been established that plaintiff has suffered a substantial reduction in both gross and net income since the picketing began. It is reasonable to conclude, and the court so finds, that this loss is directly attributable to the activities of the defendants. There has been sufficient proof of continuing irreparable injury for which plaintiff has no adequate remedy at law.
The foregoing statement is a summary of the facts established by the credible evidence or stipulated by the parties upon the trial.
Defendants contend (1) that the picketing here in question involves and grows out of a labor dispute within the meaning of section 876-a of the Civil Practice Act and that the complaint must be dismissed for plaintiff’s failure to meet the requirements of that section; (2) that they may lawfully picket for a two-fold purpose, namely, to organize plaintiff’s employees and to protest and publicize the alleged substandard conditions and terms of employment prevailing in plaintiff’s establishment.
Plaintiff contends (1) that the controversy here involves no labor dispute within the meaning of section 876-a of the Civil Practice Act and (2) that the picketing, following certification by the labor board of Local 150 as the exclusive bargaining representative of plaintiff’s employees, is contrary to the public *243 policy of the State, violative of the constitutional and statutory rights of its employees and so, unlawful.
There is no question that the picketing, at its inception, was unlawful. It was designed and intended to compel recognition of defendant unions at a time when neither represented any of plaintiff’s employees. The signs used were false and misleading. The unions sought no lawful labor objective. The court is satisfied, however, that since May 8, 1957, following certification of Local 150, the purpose of the picketing has been as stated in the legends on the placards since that date carried by the pickets, and that the picketing has been peaceful and orderly.
The controversy between the parties to this action involves no labor dispute within the meaning of section 876-a of the Civil Practice Act. The certification by the labor board of Local 150, following the election held pursuant to its direction and under its supervision, ended any dispute that may theretofore have existed (Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, 288 N. Y. 188, 197; La Manna v. O’Grady, 278 App. Div. 77, 78). Section 876-a of the Civil Practice Act is not a bar to the granting of the relief here sought.
Whatever may be the declared or actual purpose of the picketing, its indirect effect, if it is permitted to continue, undoubtedly will be to nullify the election conducted fairly and in accordance with the provisions of the Labor Law. To say otherwise would be to close one’s eyes to reality. The right of plaintiff’s employees to bargain collectively through representatives of their own choosing, a right guaranteed to them by section 17 of article I of the New York State Constitution, and by section 703 of the Labor Law, is no less sacrosanct than the right of free speech secured to these defendants and to all others by the State and Federal Constitutions.
It should be borne in mind that both defendant unions filed notices of intervention in the proceeding which led to the direction of an election and the ultimate certification of Local 150. Local 15 was represented at the hearings and participated therein. There was no suggestion, either at the trial before the hearing officer, or at the trial of this action, of collusion or overreaching on the part of plaintiff. The employees unanimously chose Local 150 as their bargaining agent at a regular, supervised election. The choice was theirs and theirs alone. This court may not permit their will to be frustrated by means employed under the guise of free speech.
As Mr. Justice Frankfurter wrote in Hughes v. Superior Court (339 U. S. 460, 464-465): “ But while picketing is *244 a mode of communication it is inseparably something more and different. Industrial picketing ‘ is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. ’ Mr. Justice Douglas, joined by Black and Murphy, JJ., concurring in Bakery & Pastry Drivers & Helpers Local v. Wohl, 315 U. S. 769, 775, 776. Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. [Citing authorities.] ” There can be no question that the picket line around plaintiff’s establishment affects, and is intended to affect, plaintiff’s business. It cannot be justified by the fact that its avowed purpose is to organize plaintiff’s employees who already have been organized and are represented by a certified union of their unanimous choice; nor can it be justified upon the basis of a purpose to publicize substandard conditions in plaintiff’s establishment. Wages, hours and working conditions are matters presently being negotiated between plaintiff and the employees’ certified representative. No contract has, as yet, been signed. It may well be that, when concluded, the agreement between' them will contain terms no less advantageous to the employees than those presently in effect in comparable establishments. In any event, whatever contract results from the negotiations will be one satisfactory to plaintiff’s employees, and will be the expression of their own free will.
In La Manna v. O’Grady (277 App. Div. 77, 79, supra), the court wrote: “ The policy of the Labor Law, which resulted in the election and determination made here, is not to be defeated by subterfuge under the guise of free' speech (Haler & Fink v. ‘ Jones ’ [277 App. Div. 176]). While the defendant can continue by proper methods to try to persuade plaintiff’s employees to join the union, it is neither necessary nor proper for such persuasion to take the form of picketing plaintiff’s place of business.” (Emphasis supplied.) This case, it seems to me, is authority for the proposition that picketing for “ organizational purposes ” following an election held under the auspices of the State Labor Board and the vote of the employees for “no union”, is contrary to the public policy *245 of the State. A fortiori, such picketing, following certification by the board of a union selected at a supervised election as the representative of employees, would be at war with that policy. The constitutional right of free speech cannot be and has not been construed so as to protect union activity which contravenes the reasonable public policy of the State. The picketing here contravenes that policy as expressed, or as it is implicit in the Labor Law of this State.
There was proof offered upon the trial to support defendants’ claim that Local 150 is not, iñ fact, or within the definition of the statute, a legitimate labor organization. This court, however, has no power to review, in this action, the certification by the board of Local 150 as the bargaining representative of plaintiff’s employees (see Great Atlantic & Pacific Tea Co. v. Boland, 176 Misc. 258 and the eases cited p. 261).
The above constitutes the decision of the court. Judgment will be directed in favor of plaintiff enjoining and restraining the defendants, individually and in their representative capacities, their agents, members and/or employees, from picketing in front of or about plaintiff’s premises, or any part thereof, from the date of entry of the judgment to be entered hereon to a date pot less than three months prior to the expiration of any contract that may be entered into between plaintiff and Local 150.