THE COWARD SHOE, INC., Plaintiff, *v.* RETAIL SHOE SALESMEN'S UNION, LOCAL 1115F, R. C. I. P. A. and Others, Defendants.

Supreme Court. Special Term, New York County, October 30, 1941.

*Spiro, Felstiner & Prager*, for the plaintiff.

*Liebowitz & Schuman*, for the defendants.

Collins, J. Denying the existence of a labor dispute, the plaintiff moves to restrain the defendants *pendente lite* from wrongfully picketing plaintiff's stores and from otherwise engaging in alleged injurious activities. The defendants counter that the picketing is rightful, and that, inasmuch as a labor dispute is presented, not only must the motion for injunctive relief be denied for non-compliance with section 876-a of the Civil Practice Act, but that their cross-motion to dismiss the complaint must be granted.

Admittedly, the provisions of section 876-a have not been complied with, and since the pivotal facts are free from entanglement, the question projected is whether a labor dispute evolves from those facts.

In the plaintiff's operation of several retail shoe stores it employs as salesmen members of the Retail Shoe Salesmen's Union of New York, Local 1268, and Retail Shoe Salesmen's Union of Brooklyn, Local 287, both CIO unions. These stores are closed shops. The plaintiff's latest contract with these unions extends to July 31, 1942. Thereunder only members in good standing of these unions are to be employed by plaintiff. The relations between plaintiff and these two unions have been and are harmonious; no dispute exists between the plaintiff and these unions or their members or the plaintiff's employees.

However, defendant Local 1115F, an American Federation of Labor union, with whom the plaintiff has had no dealings whatever, and who has not a single member in plaintiff's stores, commenced picketing those stores. The picket carries a sign reading: " Coward Shoe Is Unfair to Retail Store Salesmen's Union, Local 1115-F-R.C.I.P.A., American Federation of Labor."

This defendant union is not attempting to unionize the plaintiff — it is already unionized — nor to gain converts amongst plaintiff's employees. No question of wages, hours of employment, or other

conditions of employment with respect to plaintiff's employees is raised. The sole reason for the picketing is to retaliate against the CIO union. Because CIO picketed other stores allegedly under contract with defendant union, the latter embarked upon a campaign of retaliation by picketing stores, including plaintiff, under contract with the CIO.

This is acknowledged in the affidavit of the defendant's treasurer, who admits: " However, when the C.I.O. local unions began and continued to picket stores under contract with defendant union, to wit, the Florsheim Shoe Stores, Walk-Over Shoe Store and Selby's Shoe Store, Local 1115-F no longer felt constrained from furthering its own organizational activities and has resorted to picketing the stores of the plaintiff herein as well as others."

Is this picketing lawful? I think not. Its purpose is not to improve the conditions under which the plaintiff's employees work, or to increase their wages, or to assist them in other ways. It is not an effort to increase the numbers in defendant union. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260.) The motive is retaliatory. The objective is not improvement of the lot of plaintiff's employees. The purpose is to " get even " with the CIO union. The significant distinction between lawful and unlawful picketing, between an authentic and a fanciful labor dispute, appears in the recent case of *Opera on Tour, Inc.*, v. *Weber* (285 N. Y. 348, 355), where it was appositely stated: " If the acts of these unions have any reasonable connection with wages, hours of employment, health, safety, the right of collective bargaining, or any other condition of employment or for the protection from labor abuses, then the acts are justified. (*National Protective Association* v. *Cumming*, 170 N. Y. 315; *Bossert* v. *Dhuy*, 221 N. Y. 342; *J. H. & S. Theatres, Inc.*, v. *Fay*, 260 N. Y. 315; *Goldfinger* v. *Feintuch*, 276 N. Y. 281; *May's Furs & Ready-to-Wear, Inc.*, v. *Bauer*, 282 N. Y. 331; *Baillis* v. *Fuchs*, 283 N. Y. 133.) If on the other hand the labor objective here sought is illegal and not a lawful labor objective, since it has no reasonable connection with wages, hours, health, safety, the right of collective bargaining, or any other condition of employment or for the protection of labor from abuses, then there is no immunity for injury inflicted by a labor union. For such activities labor is not free from legal responsibility. ' * * * *prima facie* the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law * * * requires a justification if the defendant is to escape. * * * ' (Mr. Justice HOLMES in *Aikens* v. *Wisconsin*, 195 U. S. 194, 204.) "

In *Goldfinger* v. *Feintuch* (276 N. Y. 281) it was pertinently observed: " Likewise it is illegal to picket the place of business of one who is not himself a party to an industrial dispute to persuade the public to withdraw its patronage generally from the business for the purpose of coercing the owner to take sides in a controversy in which he has no interest."

Labor's right to unionize, and to the benefits issuing from unionization, is no longer challengeable. It forms an integral part of our law and economics. The relief here sought, however, does not aim to weaken labor's position or to reduce its just gains. Nor would granting the relief produce such result. I do not perceive why the plaintiff should suffer because of a struggle between the CIO and AFL unions, which contest in no real sense involves the plaintiff or plaintiff's employees or the conditions under which those employees work. What can the defendant union gain by the picketing from the plaintiff?

The defendants' insistence that section 876-a applies and that such section compels the rejection of plaintiff's complaint does not impress me as possessing validity. That section was designed as a stoppage to abuses of the injunctive process. Injunction had been employed to discourage unionization, to frustrate union activities, to wear out the workers and to bludgeon them into submission. But the section was never intended to protect the practices here indulged in or to render equity impotent to restrain them. This employer has rights, too. So have its employees. And so has the CIO union. Those rights are entitled to protection.

A labor dispute within the purview of section 876-a must be real, not fanciful. It is not every litigation to which a union is a party that presents a labor dispute. Every controversy touching union activities is not necessarily a labor dispute within the legal meaning of that term. Whether a labor dispute is presented depends upon the factual situation rather than upon the label appended to it. Dragging in the phrase " labor dispute " does not *ipso facto* throw the case into section 876-a. A labor dispute is not created by the mere use of supposedly magic words. A labor dispute is more than a slogan.

As regards the person picketed, the dispute must be genuine, not feigned or trumped up; that person must bear some real relation to the quarrel. (*American Guild of Musical Artists* v. *Petrillo*, 286 N. Y. 226, 231.)

It strikes me as manifestly unjust that the plaintiff's business should be interfered with because of an outside, independent contest, to which plaintiff is not a legitimate party, which the plaintiff did not produce or contribute to, which — in view of its contractual obligations to CIO — it cannot compose, and which

contest has no real connection or unity with plaintiff's business or its employees or with the conditions surrounding or deriving from their employment. And I cannot conceive that section 876-a tells a court of conscience it can do nothing about it.

The defendants protest that to restrain them would be a denial of free speech. Of course, free speech is sacrosanct and must be scrupulously safeguarded. To abridge it is to mutilate one of the cherished and priceless fundamentals of our government. But the defendants' conduct cannot be sanctioned or justified in the name of free speech. Free speech does not legalize untruth. Nor can the Constitution be invoked as a shield against misrepresentation. The right to speak is not a license to say anything and everything. To say the least, the picket sign is misleading. It leads the public to believe that the plaintiff is unfair to its employees or to the principles of unionism or that some sort of controversy exists between plaintiff and those employed by it, or that the plaintiff is otherwise engaged in some sort of labor dispute. None of this is true. Nor can it be truthfully said that the plaintiff is unfair to defendant union, inasmuch as it has had no relations whatsoever with that union.

The picketing here being solely retaliatory, and no labor dispute being involved, the plaintiff is entitled to injunctive relief. Accordingly, the motion is granted. Undertaking, $1,500. The cause is ordered placed on the trial calendar of Special Term, Part III, for November 17, 1941. Settle order.