GULF OIL CORPORATION, Plaintiff, *v.* ROBERT L. SMALLMAN, Individually and as President of International Brotherhood of Teamsters, Local 806, A. F. of L., et al., Defendants.

Supreme Court, Special Term, Queens County, July 17, 1945.

410

*Samuel H. Borenkind* for plaintiff.

*David I. Ashe* for defendants.

COLDEN, J. The plaintiff is a Pennsylvania corporation, licensed to do business in the State of New York. It is engaged in the business of manufacturing, distributing, refining and producing petroleum products. It maintains a division office in the borough of Manhattan, city and State of New York, which controls its business interests in the State of New York, and portions of the States of New Jersey and Connecticut. The defendant is a local labor union of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. It is affiliated with the American Federation of Labor. It is a voluntary unincorporated association, of which the defendant Smallman is the president, and the defendant Harkins a representative or delegate.

On May 20, 1942, Petroleum Trades Employees Union, Inc., a labor organization incorporated under the laws of the State of New York, filed a petition with the New York State Labor Relations Board in which it alleged that a question or controversy existed concerning the representation of employees of the plaintiff in New York State. The defendant union, among

others, applied for and was granted leave to intervene, following which an election was duly held under the supervision of the Labor Board, in which said defendant union participated. A majority of the persons voting at the said election designated and selected Petroleum Trades Employees Union, Inc., as the representative of plaintiff's employees in New York for the purposes of collective bargaining, and on November 5, 1942, the said Labor Board duly certified said union as the employees' "exclusive representative for the purposes of collective bargaining in respect to raise of pay, wages, hours of employment, and other conditions of employment."

Pursuant to such certification, the plaintiff entered into a collective bargaining agreement with the certified union, which was from time to time renewed and is presently in existence. Neither the defendant union nor any other has, since the first representation proceeding, sought or obtained a change of representation for plaintiff's employees, nor does it appear that the certified union does not presently represent a majority of plaintiff's employees.

On July 15, 1938, A. I. Savin Construction Co. entered into an agreement with the plaintiff, which is still in force, for the purchase from the plaintiff of 300,000 gallons minimum and 500,000 gallons maximum of petroleum products per annum. Savin is now engaged in certain construction work at the Idlewild Airport, Jamaica, Queens County, New York, at which point it is receiving plaintiff's petroleum products. These are delivered in vehicles owned by the plaintiff and operated by its employees, who are designated as "delivery salesmen". The products thus supplied are obtained by the plaintiff's employees from its Flatbush, Brooklyn, New York, bulk plant. Savin's employees at the airport are members of the American Federation of Labor, but not of the defendant union.

According to the complaint and moving affidavits, the individual defendants, acting in behalf of their union, notified a representative of Savin during the month of May, 1945, not to accept deliveries from the plaintiff unless the latter's vehicles were manned by members of the defendant union and if Savin and the plaintiff failed to comply, Savin was to cancel its contract and purchase its petroleum requirements elsewhere; otherwise a picket line would immediately be created at the airport and Savin's employees called out on strike. Upon failure of Savin and the plaintiff to yield to these demands, the defendants created a picket line on June 8, 1945, at the airport, which Savin's employees refused to cross, resulting in the interruption

of work. On June 11, 1945, when plaintiff attempted to make a delivery, Savin was advised by the defendant Harkins that if the delivery was accepted a picket line would immediately be formed. Following negotiations the delivery was permitted on condition that Savin call plaintiff and insist that it will accept no further deliveries at the airport unless the trucks are manned exclusively by members of the defendant union. On the same day Savin called plaintiff and instructed it to make no further deliveries unless it was done by members of the said union.

The following, in brief, is the defendants' version of the controversy, as stated in Smallman's affidavit: "The construction work now going on at the Idlewild Airport, Jamaica, created a new situation. That work, which requires tremendous amounts of gasoline, motor oil and other petroleum products, is being done entirely by A. F. of L. members. Some of the A. F. of L. unions whose members are employed in constructing the airport are Local 14 of the Engineers Union, Local 282 of the Teamsters Union, the Oilers Union and Local 731 of the Excavators & Building Laborers Union. Teamsters Local 282, in particular, is not only a sister A. F. of L. union, but is a Local of the same International Union as the defendant Union, and both are members of the same Teamsters Joint Council.

" In view of this close relationship between the unions whose members are employed in constructing the airport and the defendant Union, all of these unions were of the opinion that it was unfair to have A. F. of L. members work with gasoline and oil delivered by non-A. F. of L. members, who are working in competition with chauffeurs who are members of the A. F. of L. The very essence of unionism is, of course, solidarity. And the members of the A. F. of L. believe that the strengthening of any rival unions, especially in industries in which they are engaged or in closely related industries, is a threat to their own existence. It was, therefore, agreed by all the unions involved that their members would not work with gasoline or oil not delivered by A. F. of L. chauffeurs.

" This action was not taken against the plaintiff in particular. It has not been singled out in any way. Nor has plaintiff's customer — the A. I. Savin Construction Co.— been singled out here. The decision not to work with petroleum products delivered by non-A. F. of L. drivers has been applied to all of the construction contractors at the Idlewild Airport who purchase their petroleum products from companies whose drivers are not members of the A. F. of L. And there are other

oil companies besides plaintiff delivering petroleum products to the airport. \* \* \* As a matter of fact, any thought of injuring plaintiff in its contract relationship with Savin is so far from the defendants' minds that we would be perfectly satisfied if Savin purchased all his oil and gasoline for Idlewild from the plaintiff, provided such products are delivered to the airport by drivers presently in the plaintiff's employ who are members of the defendant Union. The plaintiff has in its employ 3 delivery salesmen at its Flatbush bulk plant and 6 delivery salesmen at its Greenpoint bulk plant who are members of the defendant Union. Both those plants are within easy distance of the Idlewild Airport, and shipments could be made without difficulty from either or both. All that the defendants ask is that since all of the employees working at Idlewild are A. F. of L., the plaintiff should use its A. F. of L. delivery salesmen to make its deliveries to the airport. \* \* \*''

The plaintiff has instituted this action for an injunction and in connection therewith seeks a temporary restraining order enjoining the defendants from committing the acts complained of. By cross motion, the defendants have moved, pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice, to dismiss the complaint for legal insufficiency against all, or, in the alternative, against the individual defendants.

There are thus presented in this controversy three principal questions:

(1) Is this a labor dispute within the meaning of section 876-a of the Civil Practice Act? If it is, then we need go no further for concededly the complaint does not plead compliance with the conditions therein set forth.

(2) In any event is the conduct with which the defendants are charged enjoinable?

(3) Inasmuch as the complaint alleges that the individual defendants are representatives of the defendant union and as such dominated, directed and controlled and still direct and control its affairs and activities, and the acts complained of were committed by them as representatives of and in behalf of said union, can they in this action be sued in their individual capacities?

(1) The first question must, under the authorities prevailing in this State, be answered in the negative, that is to say, that this is not a labor dispute within the meaning of section 876-a of the Civil Practice Act, because there exists a collective bargaining agreement between the plaintiff and the union theretofore duly certified by the New York State Labor Relations

Board as the exclusive bargaining agent for plaintiff's employees and such certification has never been disturbed or modified, and insofar as this record is concerned, said certified union still represents the majority of plaintiff's employees in the particular bargaining unit. Such was the holding in *Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union* (288 N. Y. 188, 197–198), the court stating: " When the contract was executed by appellants and the duly certified agent of the employees and went into effect, any labor dispute within the provisions of the New York State Labor Law ended and the contract as made was the sole enforceable contract between employers and and employees (Cf. *Matter of Triboro Coach Corp.* v. *New York State Labor Relations Board,* 286 N. Y. 314). Such a result is the only conclusion possible in consonance and harmony with the public policy of the State as declared in the Labor Relations Act which was to prevent or bring to an end strikes and other forms of industrial strife and unrest and to encourage and effect industrial peace among employers and employees (*United Baking Co.* v. *Bakery & Confectionery Workers' Union,* 257 App. Div. 501). The Legislature did not intend or propose that the procedure provided for that purpose should be meaningless or that it might be flaunted and made meaningless by a minority group of employees, who, themselves, had invoked the procedure to settle their dispute. The intent and purpose of the Legislature was to provide procedure for the disposal of labor controversies which, when adopted and availed of by parties to those controversies, *should end disputes, not continue them.*" (Italics supplied.)

The Appellate Division, First Department, in a decision rendered on June 1, 1945 (*Sachs Quality Furniture* v. *Hensley,* 269 App. Div. 264, 268) expressly stated in its opinion written by UNTERMYER, J.: " On account of the determination of the Labor Board, no ' labor dispute ' existed between the parties within the meaning of section 876-a of the Civil Practice Act, which would prevent the granting of an injunction *pendente lite* without establishing compliance with the conditions therein set forth. (*Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union,* 288 N. Y. 188)."

The fact that in the instant case, there were no recertifications of the union originally certified by the Labor Board, whereas in the *Sachs* case (*supra*) the union certified in 1937 was recertified in 1940 and again in 1945, is immaterial. As already pointed out, no claim is made that the union originally certified does not presently represent a majority of the employees. On the contrary, it clearly appears that it does. It follows that in the absence of a new choice, the former certification remains in effect.

(2) The defendants contend that the conduct with which they are charged is within the allowable area of free speech guaranteed by the Federal Constitution and is lawful under the common law of this State.

It is, of course, true, as was held in the *Sachs* case (*supra,* p. 267), that notwithstanding the determination of the Labor Relations Board, the defendant union, though unsuccessful in the certification proceedings " may, in the exercise of the right of free speech, by peaceful and truthful methods of picketing, attempt to win to itself the allegiance of members of the Association [successful union] who are employees of the plaintiff. (*Bakery Drivers Local* v. *Wohl,* 315 U. S. 769; *Thornhill* v. *Alabama,* 310 U. S. 88; *Carlson* v. *California,* 310 U. S. 106; *Senn* v. *Tile Layers Union,* 301 U. S. 468; *A. F. of L.* v. *Swing,* 312 U. S. 321.)" It may attempt to organize plaintiff's employees (*Stillwell Theatre, Inc.,* v. *Kaplan,* 259 N. Y. 405), and in connection therewith even picket plaintiff's place of business (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260). As was stated in *Triboro Coach Corp.* v. *Labor Relations Board* (286 N. Y. 314, 322): " Such organization may be attempted at any time, and the Board may certify the new union as the appropriate bargaining unit for the purpose of entering into further contracts with the employer upon the expiration of the existing contract. However, there is nothing in this right of union members to select a new bargaining representative which would impair the sanctity of the obligations of the existing contract while that contract was still in force."

But the defendant union has not here attempted to win to itself the allegiance of the members of the union which now represents plaintiff's employees in order to organize them with a view of having the Labor Relations Board certify it at the appropriate time as their sole bargaining agent. It has not attempted to picket the plants of the plaintiff where the members of the certified union are constantly employed, nor has it announced that said certified labor union was not an effective representative of plaintiff's employees. (*Nann* v. *Raimist,* 255 N. Y. 307.) Instead, it has picketed the place where a few members of the certified union spend a fraction of an hour several times a week unloading petroleum products delivered under a pre-existing contract with a customer who is in the construction business, using such products in connection therewith and not in the same business for profit as is the plaintiff. In *Goldfinger* v. *Feintuch* (276 N. Y. 281, 287) picketing of a retailer of products purchased by him from a nonunion manu-

facturer was permitted for the purpose of persuading " the consuming public to refrain from purchasing the *nonunion product,* whether that is at the plant of the manufacturer or at the store of the retailer in the same line of business and in unity of interest with the manufacturer." The instant case is readily distinguishable. There is no claim here that the product sold by the plaintiff to Savin is a nonunion product, nor that Savin is " in the same business for profit " as is the plaintiff.

The defendants contend that the plaintiff could readily meet their demands by transferring delivery salesmen, who are members of the defendant union, from other bulk plants to the one which serves the Idlewild Airport. However, the existing collective bargaining agreement contains a provision that " in the event employees are moved into one of the plants covered by this contract, they shall be placed at the bottom of the seniority list in the classification in which they work ". To accede to the defendants' demands would involve the placing of the transferred men at the bottom of the seniority list in the plant to which they are transferred; otherwise, said bargaining agreement would be breached. This undoubtedly would disturb the industrial peace within the plaintiff's organization which was established by the plaintiff entering into a collective bargaining agreement with the union which the State Labor Relations Board has certified. As was stated by the Court of Appeals in *Dinny & Robbins, Inc.,* v. *Davis* (290 N. Y. 101, 106) : " The act [Civ. Prac. Act, § 876-a] does not compel courts of equity to force the breach of a valid contract between an employer and its employees satisfactorily covering wages and working conditions of such employees when made as a result of collective bargaining (*Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union,* 288 N. Y. 188) and to suffer suits for damages for its breach. On the contrary, the Legislature provided in the State Labor Relations Act a due and an orderly process for settling such jurisdictional disputes (Labor Law, art. 20)."

There is some dispute here as to whether the plaintiff promised to accede to the defendant's demands and thereafter reneged on its promise, and also as to what occurred between the defendant Smallman and the plaintiff's attorney. This, however, does not affect the questions of law which are here presented. The defendants deny that they sought to have Savin cancel its contract with plaintiff, but that is not borne out by the opposing affidavits. For instance, in the affidavit of Harkins, it is stated: " At no time did I tell Mr. Cook or

any one else of the Savin Company that Savin should stop buying its gasoline and oil from Gulf. It was only when Mr. Cook had raised the question of what Savin could do if Gulf would not go along on using its A. F. of L. drivers that I told him about other companies ''. In the affidavit of the defendant Smallman, it is stated: '' We have not asked Savin to cancel his contract with plaintiff, nor have we even asked him to buy his products from any other oil company *except with respect to his* job at the Idlewild Airport. And the latter would not amount to a breach or cancellation of Savin's contract with plaintiff since there is nothing in that contract which prohibits Savin from buying petroleum products from other companies in addition to the plaintiff ''. (Italics supplied.)

It is not necessary at this time to construe Savin's contract for it appears from the reply affidavit submitted by the plaintiff that at no time during the existence of its contract with Savin did the latter purchase its maximum requirements and that to this day it has not purchased, nor is it anticipated that it will purchase the maximum requirements for the balance of the term of said contract and that, therefore, it is obligated to continue its purchase at the airport from the plaintiff.

It is clear from a consideration of the facts and circumstances here presented that an impairment of the Savin contract is the ultimate result which is bound to follow if the defendants persist in their picketing at the airport when the plaintiff delivers to Savin its petroleum requirements as heretofore. There is no strike against the plaintiff, and there is no complaint concerning the terms and conditions of employment, or its labor relations. There is not even a complaint that the union recognized by the Labor Relations Board does not properly or effectively represent the employees for whom it was certified. Then what is the purpose of the picketing and the carrying of signs that '' *gasoline used at Idlewilde Airport unfair to organized labor* ''. Upon what basis can it be said that the gasoline delivered by the plaintiff at the airport is unfair to organized labor? It is being delivered by workers under a subsisting collective bargaining agreement made by a certified labor union with no attempt ever having been made by the defendant or anyone else to obtain a different certification, and no claim has been made that plaintiff's products are nonunion products.

The picketing and the carrying of the signs in question not only interefere with plaintiff's existing labor contract with a union, which by the determination of the Labor Board it is

bound to recognize as the exclusive bargaining agent (Labor Law, § 705), but with its contract with Savin which has existed even before the certification took place. It is difficult to perceive any justification for the defendants' conduct. It renders meaningless the result which was obtained at a duly held certification proceeding in which it participated and the collective bargaining agreement which followed. The constitutional right of free speech does not include the right of a union, which has been unsuccessful in its attempt to become the bargaining agent for a unit of employees, to picket the place where a union product is delivered to a customer merely because the worker delivering it is a member of the union which was successful in becoming the exclusive bargaining agent, and is not a member of the unsuccessful union and to carry signs that the product so delivered is unfair to organized labor. Such picketing and such signs create a false impression concerning plaintiff's relations and attitude towards labor and interfere with plaintiff's existing contractual relations.

(3) Since the individual defendants are charged with having committed the acts here involved as representatives of the defendant union, which is an unincorporated association, they cannot in the first instance be sued in their individual capacity. (General Associations Law, § 16; *Institute for Public Service* v. *Winter,* 233 App. Div. 1; *Margolis* v. *Burke,* 53 N. Y. S. 2d 157.) The court is unable to perceive, under the allegations of the present complaint, that a cause of action has been sufficiently alleged against them individually. As to them, then, the complaint is dismissed.

In all other respects, the defendants' motion is denied and that of the plaintiff granted, enjoining the picketing and the carrying of the signs in question when the plaintiff's petroleum products are being delivered to Savin at the Idlewild Airport by any delivery men employed by it, who are covered by the subsisting collective bargaining agreement between the plaintiff and the union certified by the New York State Labor Relations Board.

Settle order on notice and furnish surety undertaking in the sum of $1,000.