SERVAL SLIDE FASTENERS, INC., Plaintiff, *v.* JOSEPH MOLFETTA
et al., Defendants.

Supreme Court, Special Term, Queens County, March 10, 1947.

*Milton Kuren* for plaintiff.

*Mildred Roth* and *Frank Scheiner* for Frederick Kitt and others, defendants, and for Michael Siomkin, as President of United Electrical Radio and Machine Workers of America, C. I. O., Local 1217, defendant, appearing specially.

CUFF, J. After adherents of the American Federation of Labor and Congress of Industrial Organizations Unions had competed for a long time at plaintiff's plant in their respective efforts to organize plaintiff's employees, they petitioned the National Labor Relations Board to hold a " consent election " and permit the employees to determine which union should serve as bargaining agent.

The application was granted and under the board's supervision, on November 6, 1946, the election was held. Of 442 ballots cast (there were about 500 employees) the A. F. L. received 279, the C. I. O. 147, 5 were scattering, a few were void.

A certificate of the result was issued by the National Labor Relations Board to plaintiff and the two unions. Plaintiff was directed in that certificate to transact labor relations business with the A. F. L. union. Accordingly, on November 27, 1946, a collective bargaining agreement was executed by the A. F. L. and plaintiff; the term of that contract was two years beginning November 27, 1946.

That agreement provided that " there shall be no strike, work stoppage, sit-down strike, or picketing by any employee or any group of employees " and that " all differences, disputes and grievances between the parties " be promptly arbitrated.

The C. I. O. union at first made a written commitment to the Labor Board that the election was fair and the count accurate, then six days later filed objections to the conduct of the election, only to seek the board's permission to withdraw those objections about three weeks after that; the permission was granted.

It is not denied that in February, just about six or eight weeks after the election, C. I. O. partisans began to agitate among the employees urging that pressure be applied upon plaintiff to require it to repudiate the A. F. L. and embrace the C. I. O. as the bargaining agent for the plant. A petition was circulated addressed to plaintiff to that effect. At the argument defendants' counsel declared that plaintiff could and should urge the National Labor Relations Board to take action looking toward the surplanting of the A. F. L. by the C. I. O. as requested in the petition.

Likewise it is admitted that on February 12, 1947, a certain segment of the employees left their jobs in unison, assembled at the plant's entrances and from those points urged other employees as they went through the gates to join them.

It is admitted that picketing followed the action of February 12, 1947; that signs stating " their grievances " were carried and that the picketing with and without signs is still in progress.

There are many disputed questions presented but they need not be determined at this time. The application can be decided almost entirely on the foregoing admitted facts.

Plaintiff commenced a proceeding for injunctive relief against those it considered responsible for the action of its employees as well as against the offending employees themselves on February 27, 1947. Many defendants are named but only the following were served:

| | |
|---|---|
| Gus Beonacher | Edward Fucci |
| Walter Yerks | Frederick Kitt |
| Edwin Beck | Lewis Doehm |
| Edward Klevens | Bernard McCabe |
| Frank Froehlich | George Pospisil |
| Lawrence White | Joseph Centurelli |
| Emil Fischbach | Salvatore Farugia |
| William Lillis | |

A notice has been filed by the attorney for the defendants who have answered, that the president of the C. I. O. local named as a defendant has not been served.

The instant application is by plaintiff for a temporary injunction restraining the defendants served from continuing their conduct of striking against plaintiff or of agitating or promoting a strike at its plant and for other relief. Any decision by me will relate only to those defendants who were served.

The defendants' answer to this motion is (1) that they have a right to conduct themselves as they have been doing and (2) that a " labor dispute " obtains within the meaning of section 876-a of the Civil Practice Act and as plaintiff has not complied with the conditions imposed by that enactment this application should be denied.

DALY, J., in a very similar situation said: " Notwithstanding the broad language of the statute in defining a labor dispute, the controversy existing between the parties herein does not, in the court's opinion, come within the purview of said statute. There was a labor dispute prior to the certification by the National Labor Relations Board. This certification, following an election duly held by that Board pursuant to the agreements above referred to, brought that labor dispute to a conclusion. It would be anomalous, under these circumstances, to say that the labor dispute still exists merely because a minority of employees, apparently dissatisfied with the result (the National Labor certification), is unwilling to abide by the will of the majority. (Cf. *Oberman & Co., Inc.,* v. *United Garment Workers of America,* 21 F. Supp. 20; *Union Premier Food Stores, Inc.,* v. *Retail Food Clerks and Managers Union, Local No. 1357,* 98 F. [2d] 821; *Stalban* v. *Friedman,* 171 Misc. 106.) There being no labor dispute, the sole purpose of the minority union would seem to be to induce the breach of the contract which the certified union entered into with the plaintiff, and which contained the provision for a closed shop, pursuant to the agreement entered into by both unions prior to the election.

The plaintiff has thus been placed in a dilemma. If it accedes to the demands of the minority union, it breaches its contract with the certified union. If it attempts to abide by the terms of said contract, as it did in the instant case, it has a strike on its hands, and picketing and the other activities that go with it. It seems to the court that since the picketing by the minority union is, in effect, an attempt to force the breach of the agreement which was entered into under the circumstances above described, this court of equity should prevent the irreparable injury which flows therefrom." (*Euclid Candy Co. of New York, Inc.,* v. *Suma,* 174 Misc. 19, 21–22, affd. 259 App. Div. 1081.) The same question was exhaustively discussed in *Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union* (288 N. Y. 188) and again in *Dinny & Robbins, Inc.,* v. *Davis* (290 N. Y. 101). These decisions have been recently followed in *Gulf Oil Corp.* v. *Smallman* (185 Misc. 409) and *Coward Shoe, Inc.,* v. *Retail Shoe Salesmen's Union* (177 Misc. 708). The law seems to be that in the circumstances at bar a " labor dispute " does not exist.

It is claimed by defendants that they are only exercising free speech. It is admitted that beginning February 12, 1947, picketing was indulged in by defendants. In this admission they do not negative the well-known objectionable act, to wit: pickets creating the impression that the employees of the plant are on strike. That conduct is in direct violation of law, because there is no strike at plaintiff's plant. The National Labor Relations Board, the agency having jurisdiction and authority to act, has spoken. Its decision must be honored by all; there can be no exceptions. Its mandates must be obeyed by all; there can be no evasions. Where less observance than that of a proper decree is tolerated, orderly government surrenders to mob rule.

The decision by the Labor Board following the election meant that that " labor dispute " was officially ended forever. With the termination of the " labor dispute " picketing by anybody, agitating for a new bargaining agent among the employees by anybody became unlawful. That decision concluding the " labor dispute " meant to plaintiff that it could prosecute its business assured of no interference, no strikes, no agitating during the term of the collective bargaining contract which was entered into on November 27, 1946, with the union designated by the National Labor Relations Board.

This court has the power to enjoin all picketing where violence has attended the picketing which has been in progress. (*Busch Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150, Note, 124 A. L. R. 751.) In this case I find that the picketing was without any color of justification. It was deliberately carried on for the purpose of frustrating the decision or certification of the National Labor Relations Board, an agency of the Government, clothed by law with authority to decide the issue. In the *Busch* case, cited, there was a " labor dispute " and peaceful picketing was lawful but the court enjoined all picketing because of the violence. At bar, the picketing indulged in although not accompanied by violence was never lawful. Only restricted picketing of the kind permitted in *Dinny & Robbins, Inc.,* v. *Davis* (290 N. Y. 101, *supra*) would have been proper. No attempt was made here by the defendants and their pickets to truthfully publicize their grievances. They generated a full-blown strike scene beginning February 12th, with unrestricted picketing which included carrying untruthful signs and making threatening and untruthful utterances to the other employees — all to the pecuniary detriment of plaintiff, an innocent bystander. There is a forum to which defendants may take their grievances and to that forum they must go for redress.

There is no interference with free speech when an injunction seeks only to sustain the orderly processes of and mandates issued by and under the constituted authority of the National Government, following a complete and fulsome hearing and, as in this case, an unchallenged referendum. There must be stability in government!

The public should be able to rest assured that a decision by the body having jurisdiction is the law of the land, to the extent that disagreement with the determination may not take the form of inflicting damage on the successful party or the public. That, of course, does not mean that everyone is bound to agree with every judicial or governmental determination or every new law. The right to disagree with decisions or enactments is inviolate. But acts of constituted authority may not be ignored without appropriate penalty!

The motion is granted. Order on notice.