Van Voorhis J.
On September 30, 1949, an election among plaintiff’s twenty-one employees was held under the New York State Labor Relations Act (Labor Law, §§ 700-716). Twenty votes were cast, two of which were in favor of defendant union as collective bargaining representative, and eighteen were for no union. These employees were not strangers to defendant, which had acted as their collective bargaining representative for over two years before they voted against it. Defendant had opposed the holding of an election, having called out 200 pickets (none of whom were employed by plaintiff) in a hostile demonstration in front of plaintiff’s store upon the day when an informal hearing was scheduled before the State Labor Relations Board to arrange for conducting the election. These pickets paraded in solid mass for over two hours and a half, shouting and making themselves generally obnoxious. About forty rushed into the store, beat two of the employees and broke the eye glasses of plaintiff’s president, inflicting several cuts on his neck and arm in the scuffle. The police were called and one man arrested, although he was afterwards freed on his own recognizance. ’
.Defendant threatened to continue these demonstrations until the employer withdrew its petition for an election, and signed a new contract with defendant. Defendant feared that the result of the election would deprive it of power to become the bargaining representative. Two days before an election was ordered, defendant attempted to call a strike by sending notice to all of plaintiff’s employees who were members, stating that if any member failed to participate he would be subject to grievance board action, which might result in expulsion from the union, in which event he would never be permitted to work in a union shop. The. pickets then carried a sign in: front of the premises stating that plaintiff’s employees were on strike. None of them went on strike at any time. Upon that day (the day before the election) another' mass .demonstration of about fifty pickets occurred, the .pickets shouting at customers “ Do not cross the picket line. The employees of Haber & Fink are on strike.” The next day, September 30, 1949, after the result of the secret balloting had become known, and the union had been defeated, plaintiff’s attorneys demanded that the sign stating that plaintiff’s employees were on strike should be removed immediately. A.s a result of that letter, the strike sign was removed but a new one was substituted, stating “ Haber & Fink refuses to bargain in good faith, unfair to Local 830 ”. On October 6th *179 a demand was made to remove that sign, but it continued to be displayed by pickets at least up to the time of the verification of the moving affidavit on October 7, 1949. It appears from a supplemental affidavit that since then defendant has conducted continual mass demonstrations between 12:00 m. and 2:00 p.m., when a group of fifty people have paraded in front of plaintiff’s store shouting such admonitions to customers as 16 Do not cross the picket line “ Pass this store by ”; “ The workers here work for starvation wages, at very long hours ”; “ This store refuses to sign a contract with Local 830 “ Pass it by, there are plenty of other stores around the corner “ It is un-American to cross the picket line ”. The area director of defendant is quoted as having stated — which is not denied — that defendant intended to keep these pickets in front of plaintiff’s store, and to continue these mass demonstrations indefinitely, until plaintiff was forced to sign a contract with defendant union. Such mass picketing and demonstrations continued regularly at least up to the date of verification of the supplemental affidavit on October 19th. These facts are not denied by any answering affidavit, except that an agent of the union states, in general terms, that there has been no violence or injuries. He makes no denial of the fact that picketing has been conducted “ in numbers that of themselves carry a threat of violence ” (Hughes v. Superior Court of California, 339 U. S. 460, 466, Frankfurter, J.). The agent admits that picketing had lasted for nearly two months when his affidavit was verified," and avers that “ There are two objectives for which the union here is picketing ”, first, that it hopes to persuade plaintiff’s employees to support defendant in its efforts to obtain a contract with plaintiff and, second, that it seeks to enter into a contract with plaintiff representing at least the two employees who voted to be represented by defendant. So far as the two employees are concerned, it is noteworthy that the record discloses no demand by defendant upon plaintiff that it bargain collectively with defendant on behalf of those two employees, nor any refusal on plaintiff’s part to do so.
These alleged objectives are clearly specious, as was held by Special Term. Having been members of defendant and subject to its representation for at least two years, these employees were not likely to be further informed or educated by the legends on these picket signs. It was conceded by defendant’s counsel upon the argument of the appeal that the picketing was carried on to induce compliance by the employer with no demand which. *180 the employer could accede to without violating the Labor Relations Act. The object of these procedures is not persuasion of plaintiff’s employees to reverse their rejection of defendant after two years’ experience at close range but, instead, to exert economic pressure against the employer in order to force it to violate the Labor Relations Act by compelling its employees to join defendant union against their will or, in the alternative, to drive plaintiff out of business and thus instil fear into these employees that they would lose their present jobs and that the union would prevent their obtaining any employment elsewhere.
No question of hours, wages or working conditions is involved.
Defendant-appellant urges on the appeal (though it was not mentioned in the agent’s affidavit as either of the two objectives for the picketing) that in any event it is entitled by picketing plaintiff’s store to publicize the fact that it is a nonunion shop, in order to persuade prospective customers to buy elsewhere. It is a nonunion shop due to no fault of plaintiff, but under the policy of the Labor Relations Act that there shall be nonunion shops when the employees in the appropriate collective bargaining unit vote that it shall be so. The policy and integrity of the Labor Relations Act are involved. There has been an election, which it is defendant’s object to nullify by means other than persuasion. The 90% of plaintiff’s employees who voted not to have defendant represent them, are entitled to have their decision'respected. Plaintiff, also, is entitled to be protected from the harassing and economically destructive tactics that have been brought to bear against it. That is the public policy embodied in this statute, which the Legislature evidently intended to prevail over this contention by defendant. In International Brotherhood of Teamsters, Local 309 v. Hanke (339 U. S. 470) the Supreme Court of the United States recently upheld a State court decree enjoining peaceful picketing of self-employers, notwithstanding the union’s contention that it had a constitutional right to publicize the fact, by picketing, that the employers were nonunion. In the light of the entire course and conduct of defendant here, the contention is a pretext and legalism having no relation to the reality of defendant’s purpose and its contemplated effect. We are not required to indulge ulterior conduct merely because it is given the guise of a constitutional right which is not truly involved. This argument for defendant is less persuasive due to the record of continual mass picketing, shouting and other forms of violence. Fifty pickets milling about and shouting in front of a *181 small store, is a method of obtaining an objective by physical force or psychological terror, even when it does not issue in assault and battery. There is a distinction between such a blockade and the ideal of freedom of speech, so insistently pressed upon us undér the First and Fourteenth amendments to the Constitution of the United States. Where there has been force ana violence, or their equivalent, or persistently untruthful signs displayed, picketing has been entirely restrained due to the manifest probability that if any is permitted it will get out of hand (Steinkritz Amusement Corp. v. Kaplan, 257 N. Y. 294, 296; Exchange Bakery & Restaurant, Inc. v. Rifkin, 245 N. Y. 260, 269 : Busch Jewelry Co. v. United Retail Employees’ Union, 281 N. Y 150; Enterprise Window Cleaning Co. v. Slowuta, 299 N. Y. 286; Hughes v. Superior Court of California, 339 U. S. 460, supra, citing Dorchy v. Kansas, 272 U. S. 306; Milk Wagon Drivers Union of Chicago v. Meadowmoor Dairies, Inc., 312 U. S. 287; Hotel & Restaurant Employees’ Int. Alliance v. Wisconsin Employment Relations Bd., 315 U. S. 437; Carpenters & Joiners Union v. Ritter’s Cafe, 315 U. S. 722; and Giboney v. Empire Stor. & Ice Co., 336 U. S. 490).
Moreover, even the peaceful picketing of an employer has been enjoined when conducted in aid of an unlawful objective. Such an objective is an attempt to coerce an employer to bargain with a defeated union following an election under the Labor Relations Act (Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, 288 N. Y. 188; Dinny & Robbins, Inc. v. Davis, 290 N Y. 101; Euclid Candy Co. of New York, Inc. v. Summa, 174 Misc. 19, affd. 259 App. Div. 1081; Serval Slide Fasteners, Inc. v. Molfetta, 188 Misc. 787). The same rule applies where the objective is to nullify a labor board election that has resulted in a vote for no union. The Supreme Court of the United States has recently passed upon the question adversely to defendant-appellant in a case where the employees chose no union (Building Service Employees Int. Union, Local 262 v. Gazzam, 339 U. S. 532). In sustaining an injunction in such a case, the court said (p. 539): “ An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees’ selection of a bargaining representative.” The case of Giboney v. Empire Stor. & Ice Co. (336 U. S. 490), was cited and quoted from as follows : ‘1 They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade.” (336 U. S. 502- *182 503.) The Supreme Court affirmed an injunction granted by the courts of Washington (34 Wn. [2d] 38, 207 P. 2d 699) after the Supreme Court of Washington had reconsidered and revised a number of its prior decisions (29 Wn. [2d] 488).
The United States Supreme Court did call attention to the circumstance that the Washington courts had not prohibited picketing of workers by other workers, and stated that there was no contention in that case that picketing directed at employees for organization purposes would be violative of that policy. This is not applicable to the facts in the present action, however, where there is not only a background of violence by mass picketing and other means, but it also appears that the object of the picketing is transparently not to persuade employees who already knew all about the union, but to use that as a pretext to retaliate against and ruin the employer.
Quoting from the opinion by Frankfurter, J., in Hughes v. Superior Court of California (339 U. S. 460, 464-465, supra): “ But while picketing is a mode of communication it is inseparably something more and different. Industrial picketing 1 is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. ’ Mr. Justice Douglas, joined by Black and Murphy, JJ., concurring in Bakery & Pastry Drivers & Helpers Local v. Wohl, 315 U. S. 769, 775, 776. Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. See Gregory, Labor and the Law 346-48 (rev. ed. 1949); Teller, Picketing and Free Speech, 56 Harv. L. Rev. 180, 200-02 (1942); Dodd, Picketing and Free Speech: A Dissent, 56 Harv. L. Rev. 513, 517 (1943); Ilellerstein, Picketing Legislation and the Courts, 10 N. C. L. Rev. 158, 186-87, n. 135 (1932). ” As the foregoing quotation clearly indicates, the picket line around plaintiff’s place of business directly affects, and is intended to affect, plaintiff’s business, which is not to be justified- in this instance by a pretext that it is done to convince plaintiff’s employees. If the employees are to be solicited, it must be done in some manner which does not result in the coer *183 cion of plaintiff. (See, also, Building Service Employees Int. Union, Local 262 v. Gazzam, 339 U. S. 532, supra, and International Brotherhood of Teamsters, Local 309 v. Hanke, 339 U. S. 470, supra.)
Although the affidavit by defendant’s agent says that it hopes to persuade the employees to support defendant, the signs carried by the pickets state that plaintiff refuses to bargain in good faith and is unfair to Local 830. These signs themselves demonstrate the falsity of this assertion of the object of the picketing.
This conclusion is arrived at the more readily inasmuch as all of the signs carried by the pickets have been essentially false. In order to present any true idea of the situation to the public, it would be necessary to show that defendant union had been rejected overwhelmingly after an election conducted by secret ballot under the auspices of the Labor Relations Board. Manifestly, if this fact had to be made known on the placards carried by these pickets, picketing would automatically end.
Defendant’s motion to dismiss the complaint for insufficiency was properly denied, and a temporary injunction granted. The order appealed from should be affirmed, with $20 costs and printing disbursements.